**No. 24-4950**

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

Heidi Brown,
Respondent–Appellee,

v.

Arnaud Paris,
Petitioner–Appellant.

On Appeal from the United States District Court
For the District of Oregon, Medford Division
No. 1:24-cv-00648-AA
The Honorable Ann Aiken

---

### OBJECTION TO APPELLANT'S EMERGENCY MOTION TO VACATE
### STAY OF MANDATE

---

**Filed by:**

Heidi Brown, Respondent–Appellee, pro se

385 Strawberry Lane, Ashland, Oregon 97520

Email: heidimparis@gmail.com

Phone: (541) 944-2066

## I.    Introduction

Appellee Heidi Marie Brown respectfully objects to Appellant Arnaud Paris's Emergency Motion to Vacate Stay of Mandate. The Court's November 18, 2025 order staying the mandate for 90 days (and pending Supreme Court review if a petition is filed) was properly issued to allow Appellee to seek certiorari. Appellant's motion offers no valid basis to disturb that stay. Indeed, the claimed "emergency" is largely of Appellant's own making. While he decries the lack of contact with his children and the passage of time, he omits that he has been afforded parenting time under a final Oregon custody judgment **(Exhibit 1, pg.17)** – time he is not attempting to exercise. Instead of utilizing his court-approved parenting time (such as by making scheduled calls during the approved times, seeing the children in person on Sundays, or expanding that parenting time by meeting the conditions set by the Oregon court), Appellant has refused to do so, all while blaming Appellee for his lack of contact. Appellant also mischaracterizes the holding of *Chafin v. Chafin,* 568 U.S. 165 (2013), which addressed stays of a return order to prevent mootness on appeal, not a stay of mandate pending a certiorari petition. *Chafin* does not support the extraordinary relief Appellant seeks. Finally, and most importantly, the current stay protects Appellee's right to petition

1

the Supreme Court on a significant legal issue (the fugitive disentitlement doctrine). Proceeding immediately with further Hague proceedings in the district court – as Appellant urges – would effectively moot that issue and remove Appellee's ability to seek Supreme Court review forever. The balance of equities and the integrity of the appellate process strongly favor maintaining the stay of mandate. Appellant's motion should be denied.

---

## Argument

## II. Appellant's Lack of Contact with the Children Is Self-Inflicted, and His Factual Assertions Are Misleading

Appellant's portrayal of irreparable harm stemming from "nineteen months" of "no contact" with his daughters omits critical facts, is false and misleading. In truth, Appellant has court-authorized parenting time under the final Oregon custody judgment – but he has chosen not to exercise it. He has had contact with the children facilitated by Ms. Brown, but has refused to set a regular contact schedule within the court ordered times or initiate contact himself. The Oregon Limited Judgment Regarding Custody, Parenting Time and Child support (entered December 28, 2023) grants Appellant supervised parenting time as well as regular

phone calls with the children (to be expanded upon certain conditions). These conditions were imposed precisely because of Appellant's unhinged and deeply disturbing behavior and his violation of court orders. Among the conditions is that Appellant comply with Oregon's child protective measures – before exercising unsupervised parenting time. Appellant has not taken any steps to satisfy these conditions. He has not attempted to call the children during the court-approved time slots or exercise in-person parenting time, even though **nothing prevents him from doing so other than his own refusal**. In short, Appellant's limited contact with the children is a consequence of his own choices, not a result of any wrongdoing by Appellee.

Mr. Paris' motion accuses Ms. Brown of "misrepresentation" in suggesting that only his failure to resolve his Oregon warrants and exercise court allowed parenting time and contact stands between him and the children. But Ms. Brown's suggestion is entirely accurate. The outstanding bench warrant – is designed to ensure cooperation and compliance with state court orders and the preliminary parenting plan is crafted to protect the children from significant harm. It is disingenuous for Appellant to claim that the Oregon judgment's parenting time conditions are "impossible" to satisfy. There is parenting time set out that is immediately available to Mr. Paris, if he chooses to exercise it. His failure to

3

exercise parenting time and regular contact with the children per the court order is entirely outside of Appellee's control and entirely within Appellant's control. It appears that Appellant is more interested in creating fodder for his legal arguments than actually having regular contact with the children.

In other words, Appellant created the very situation he now decries. Equity does not favor a litigant who, like Appellant, creates his own urgency by failing to follow legal processes. The Court should view Appellant's assertions with skepticism: far from an innocent parent blocked from his children, Appellant has consciously chosen not to exercise the parental access already available to him.

Moreover, Appellant's suggestion that the stay of mandate is the cause of his prolonged separation from the children is incorrect. The true cause is Appellant's ongoing fugitive status, his litigation choices and refusal to exercise the parenting time immediately available to him. Recall that the district court dismissed Appellant's Hague petition under the fugitive disentitlement doctrine because Appellant would not appear in Oregon to face his outstanding warrant. That dismissal (now reversed) and the ensuing appeal significantly prolonged these proceedings. Any "delay" in resolving Appellant's petition is thus largely self-inflicted. Having invoked his appellate rights (and prevailed before this Court),

4

Appellant cannot now fault Appellee for likewise utilizing lawful procedures to seek review of an important legal issue.

In sum, Appellant comes to this Court with unclean hands: he asks for extraordinary relief from a delay that he himself precipitated by flouting court orders and failing to take advantage of existing parenting opportunities. This Court should reject Appellant's factual inaccuracies and self-serving narrative.

## III. *Chafin v. Chafin* and the Hague Convention's Expeditiousness Requirement Do Not Require Lifting the Stay

Appellant's reliance on *Chafin v. Chafin*, 568 U.S. 165 (2013), is misplaced. In *Chafin*, the Supreme Court held that compliance with a district court's return order (sending the child back to the foreign country) did not moot the left-behind parent's appeal. The Court observed that if appeals were mooted by the child's return, courts would feel compelled to grant stays of return orders as a matter of course, which would conflict with the Convention's mandate of prompt return.

Importantly, the context in *Chafin* was whether to stay a *district court's return order pending appeal* so that the appeal would not become moot. Here, by contrast, we are at a different stage: Appellee (the prevailing party in the district court) seeks a stay of the appellate *mandate* pending a potential certiorari petition. There is no return order currently being stayed – the children's residential situation has not changed throughout the appeal. Thus, the concern in *Chafin* about lengthy stays preventing the return of a child to her habitual residence is not applicable. In fact, the Supreme Court in *Chafin* expressly counseled that courts should apply "traditional factors" in deciding whether to stay a return order, rather than automatically issuing or denying stays.

That is exactly what this Court did here: it considered the relevant factors under Federal Rule of Appellate Procedure 41(d)(2) – namely, whether the certiorari petition would present a substantial question and whether good cause for a stay existed – and granted a time-limited stay in its discretion. Nothing in *Chafin* forbids such a measured approach. If anything, *Chafin* supports giving each case "individualized treatment" regarding stays, which is precisely what has occurred. Appellant also invokes Article 11 of the Hague Convention, which calls for expeditious proceedings (with an aspirational six-week timeframe for a decision). Appellee does not dispute that Hague cases should be handled promptly. But the

Convention's emphasis on speed does not override the normal appellate process or a litigant's right to seek review in higher courts. Indeed, the Convention is implemented in the United States through our legal system, which includes multi-tiered review. It is not unusual for Hague cases to span many months or even years through appeals – as the Supreme Court itself recognized in *Monasky v. Taglieri*, 589 U.S. 68, 140 S. Ct. 719 (2020). In *Monasky*, the Court noted that the litigation had lasted over four-and-a-half years, "dwarf[ing] the six-week target time for resolving a return-order petition," yet the Court still undertook review of the legal issues. In other words, expedition is a goal, not an absolute command that forecloses appellate rights. Here, the roughly two-year duration of this case is regrettable, but it largely stems from necessary appellate resolution of the fugitive disentitlement question. Appellant cannot credibly argue that the additional few months of a certiorari briefing schedule will fatally undermine the Convention's purposes, especially when balanced against the importance of ensuring the law is correctly applied. Furthermore, Appellant's argument that any stay "rewards" an abducting parent (here, Appellee) with more time is unfounded. Appellee is not seeking delay for delay's sake; she is seeking an opportunity for the Supreme Court to review a novel and important legal issue. By granting the temporary stay, this Court did not countenance any tactical advantage – it simply preserved the status quo pending possible high-court review. Unlike a parent who absconds to run out

the clock, Appellee has participated in this litigation at every stage and is following the rules in requesting appellate review. In short, nothing about maintaining the stay violates the letter or spirit of the Hague Convention. The Convention's goal of a prompt resolution must be balanced with fairness and accuracy in the judicial process. Here, that balance favors allowing a short, defined pause for Supreme Court review, rather than rushing to a Hague trial at the expense of important legal principles.

## IV. The Stay Properly Preserves Appellee's Right to Seek Supreme Court Review and Prevents Mooting of the Disentitlement Issue

The primary purpose of the stay is to safeguard Appellee's right to petition the Supreme Court for review of this Court's October 3, 2025 decision. Appellee intends to file a timely petition for a writ of certiorari on the substantial question of whether a Hague petition can be dismissed under the fugitive disentitlement doctrine when the petitioner is subject to a related outstanding arrest warrant. This issue has significant implications beyond the immediate case, and the panel's opinion acknowledged the importance of the parental rights at stake. Under Federal Rule of Appellate Procedure 41(d)(2)(A), a stay of the mandate pending certiorari may be granted upon a showing that the petition will present a substantial question and that there is good cause for a stay. In granting Appellee's motion for a stay, this

8

Court implicitly found those criteria satisfied. Indeed, the question of applying

fugitive disentitlement in international child abduction cases is, by Appellant's own

admission, an issue of first impression worthy of careful consideration. Appellee

has a statutory right to seek certiorari within 90 days of the denial of rehearing, and

the orderly administration of justice favors maintaining the status quo until the

Supreme Court either declines to hear the case or resolves it on the merits. If the

mandate were lifted now, Appellee's certiorari rights would be rendered effectively

meaningless. The case would return to the district court immediately, and

proceedings on the merits of the Hague petition would recommence. Appellant's

goal, of course, is to obtain a return of the children to France without further delay.

But if that were to happen and the children were removed from the United States

before the Supreme Court had a chance to weigh in, the core issue of the district

court's authority to dismiss the petition (and Appellant's eligibility to pursue relief

despite his fugitive status) would evade review. The Supreme Court cannot

meaningfully decide whether the case should have been dismissed for fugitive

disentitlement if the Hague trial proceeds as the petition itself is what was

dismissed before trial. As a practical matter, the disentitlement issue would be sunk

beneath accomplished facts and Appellee would not be able to retroactively undo

the prejudice of Appellants frivolous and abusive litigation. This is precisely why

this Court's stay order sensibly provided that the mandate will remain stayed

pending the Supreme Court's disposition of the certiorari petition. It preserves the Court's ability to decide the case once, and correctly, rather than allow a premature Hague trial that could later prove unjustified.

## V. Appellee Would Suffer Prejudice from Vacating the Stay

Appellant argues that Appellee suffers no prejudice from vacating the stay, suggesting that she could still file a certiorari petition after the mandate issues. This argument overlooks the very real harms that would ensue. First, as explained above, proceeding now would risk mooting Supreme Court review of the disentitlement issue. Courts have long recognized that the power to grant a stay of mandate exists to prevent exactly that scenario, ensuring that an appellant (or here, the appellee) can meaningfully exercise her right to seek higher review. Second, Appellant's blithe assurance that such disruption is of no consequence to Appellee is wrong. The prejudice to Appellee and the children from an unjustified immediate issuance of the mandate is concrete and significant. On the other side of the ledger, maintaining the stay for its brief intended duration poses minimal prejudice to Appellant. Appellant remains in no worse a position during the stay than he has been for the past several months (or indeed since the appeal was filed). While he decries the additional 90 days as "devastating," the reality is that the

children have been living in Oregon with Appellee – their mother and sole custodian – throughout this litigation, and **Appellant has chosen not to exercise any visitation in the interim**. Preserving the status quo a little longer does not impose any new hardship on Appellant beyond the continuation of circumstances already in place. **Appellant can choose to exercise his court allowed parenting time at any time.** And unlike Appellant's claimed injuries (which, as discussed, are largely self-inflicted), the harm of mooting Supreme Court review would effectively extinguish Appellee's rights to that review.

Although the Ninth Circuit's decision technically remands the case, it conclusively determines that the fugitive disentitlement doctrine cannot be applied to bar Mr. Paris's civil Hague Convention petition. **That ruling is binding on remand and not subject to further reconsideration by the district court.** The case therefore falls squarely within the *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 482–83 (1975), exception recognizing appellate finality where the federal question has been fully resolved but remand proceedings are unrelated to it. If the district court proceeds on the Hague merits, Respondent's ability to seek dismissal under the fugitive disentitlement doctrine will become **moot**, and Supreme Court review of this important question will be permanently foreclosed. A stay is thus essential to preserve jurisdiction and prevent irreparable loss of review.

In sum, the balance of hardships and the public interest strongly support leaving the stay of mandate in place. Appellee has a rightful opportunity to present her case to the Supreme Court, and that opportunity would be effectively nullified if the mandate were to issue now. Maintaining the stay preserves the integrity of the appellate process and ensures that, if the Supreme Court grants review, it can provide guidance on the disentitlement issue *before* actions are taken that cannot be undone.

## VI. The Oregon Circuit Court Found that Mr. Paris Poses a Significant Risk to the Children

The Oregon Circuit Court (Jackson County) has explicitly determined that Mr. Paris's own conduct makes him a serious risk to the children's safety. The state court acknowledged the "high-risk nature of the situation" and Mr. Paris's demonstrated "willingness to break criminal statutes,"(Exhibit 1, pg 14) and unhinged behavior accordingly severely limited his parenting time until numerous protective conditions are met. Among those court-ordered conditions, the court required a professional evaluation to ensure the children's safety: specifically, *"a determination is made by a licensed psychologist from Jackson County that Father poses no physical or psychological risk to the children and this determination is*

*confirmed by the court"* (Exhibit 1, pg 14) before Mr. Paris's parenting time could be expanded.

The Oregon court further mandated proof that Mr. Paris "no longer poses a risk of abducting the children" (Exhibit 1, pg. 14), subject to confirmation by the court. These stringent prerequisites—imposed *before* Mr. Paris may exercise anything beyond minimal parenting time—reflect the Oregon court's deep concern for the children's welfare under Mr. Paris' care.

Importantly, Mr. Paris's continued separation from the children is a direct result of his own conduct, his deeply disturbed behavior and the Oregon court's justified child-protective measures, not any wrongdoing by Ms. Brown. It was Mr. Paris' own actions and flagrant violations of court orders and law that necessitated the Oregon court's extraordinary safeguards. Indeed, the court found that Mr. Paris had unlawfully taken the children to France in defiance of an Oregon restraining order—conduct the court pointedly described as "criminal". By refusing to obey court directives (even to the point of incurring a bench warrant for his arrest), Mr. Paris created the very circumstances that limit his access to the children. The upshot is that Mr. Paris's lack of contact with the twins stems from his own choices and the court's duty to protect the children, not from any improper withholding by Ms. Brown.

This court-ordered restriction is consistent with the remedial structure of ICARA, which affirms that U.S. courts "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a). Critically, ICARA mandates that such protective measures are governed by state law requirements, not federal law. See 22 U.S.C. § 9004(b) ("No court exercising jurisdiction of an action brought under section 9003(b) of this title may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied."). Thus, any expansion of parenting time must comply fully with Oregon state court conditions—not with any generalized or speculative federal entitlement.

Moreover, Mr. Paris has not been deprived of all contact with the children. He has had phone calls with the children—all of which were initiated by Ms. Brown. However, Mr. Paris has not placed phone calls during the specific parenting time hours designated by the Jackson County court in over a year and a half. This pattern of noncompliance and lack of effort undercuts any assertion of urgency or harm and underscores the fact that **Mr. Paris's limited contact results from his own inaction and refusal to cooperate with the court-ordered schedule**.

14

Under these facts, Appellant cannot credibly claim that he is being unlawfully kept from his children; rather, **his separation from them is self-inflicted and court-mandated for their safety**, consistent with ICARA's structure and Oregon's protective findings.

---

## VI. Conclusion

For the foregoing reasons, Appellee respectfully requests that the Court deny Appellant's Emergency Motion to Vacate Stay of Mandate. The current stay was appropriately granted under Rule 41(d)(2) to protect Appellee's certiorari rights and to prevent irreparable harm. Appellant's situation – unfortunate as any custodial dispute is – does not justify extraordinary relief, especially when that situation is substantially of his own making. The orderly course is to maintain the stay of mandate and allow the Supreme Court petition process to run its short course. Appellee stands ready to proceed with the underlying case as soon as the Supreme Court has either declined review or decided the matter, but not before. Respectfully, the motion to vacate the stay should be denied, and the stay of mandate should remain in effect pending resolution of Appellee's petition for writ of certiorari.

RESPECTFULLY SUBMITTED this 24th day of November, 2025.

Heidi Brown
385 Strawberry Lane,
Ashland, OR 97520
Telephone: (541) 944-2066
Email: heidimparis@gmail.com
Respondent-Appellee, Pro se

16

# CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing Objection To

Emergency Motion to Vacate Stay of Mandate with the Clerk of the Court for the

United States Court of Appeals for the Ninth Circuit by using the appellate

electronic document submission system for people without lawyers. Participants in

the case who are registered CM/ECF users will be served by the appellate CM/ECF

system. A copy will also be mailed by U.S. Mail, postage prepaid, to any

non-registered party.

DATED this 24th day of November, 2025.

Heidi Brown
385 Strawberry Lane,
Ashland, OR 97520
Telephone: (541) 944-2066
Email: heidimparis@gmail.com
Respondent-Appellee, Pro se

# EXHIBIT 1

**EXHIBIT 1**

Heidi Brown
2256 Abbott Avenue
Ashland, OR 97520
Telephone: (541) 944-2066
Email: heidimparis@gmail.com

Plaintiff, pro se

Certified True Copy of The Original
ATTEST: 12/20/2023
Jackson County Court
Trial Court Administrator
State of Oregon - Jackson County
By



Verified, Correct Copy of Original 12/28/2023

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF JACKSON

In the Matter of:

| | |
|---|---|
| HEIDI BROWN, | Case No.: **22DR17285** |
| Petitioner, | |
| vs. | |
| ARNAUD PARIS, | IXO 12-28-23 |
| Respondent | ~~AMENDED~~ LIMITED JUDGMENT REGARDING CUSTODY, PARENTING TIME, AND CHILD SUPPORT AND MONEY AWARDS |

THIS MATTER comes before the Court for a hearing on custody, parenting time, and child support. Mother (petitioner) appeared with her attorney, Taylor Murdoch. Father

LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 1

(respondent) did not appear. This court, after reviewing the testimony and submissions by mother, is now fully advised and makes the following findings:

(1) Mother and Father are the parents of Eva and Juliette. Additional information concerning the children can be found on the parties' UTCR 2.130 Confidential Information Forms.

(2) At the time of the filing of this case, neither party had resided in the United States for a period of (6) months immediately prior to filing this Petition for Dissolution. Therefore, there was no home state for the children under ORS 109.741(1)(a). However, jurisdiction is proper under ORS 109.741(b) and the UCCJEA for all of the reasons set out in paragraphs 4 and 8 of mother's amended petition. The court finds the facts set out in those paragraphs as accurate. It further finds that venue is proper because at least one party resided in Jackson County at the time of the case's filing.

(3) At the time of the original filing of this petition, Mother was not aware of any other domestic relations suits or petitions for support pursuant to ORS 108.110 involving the parties pending in any other court in the state of Oregon or in any other jurisdiction.

(4) Subsequent to the filing of this case, Father obtained an order regarding custody and parenting time from a court in France and attempted to register that judgment in Jackson County (case # 23DR08269). On August 18, 2023, this court entered a Limited Judgment Re Registration which determined that France has no jurisdiction in this matter and that declined to confirm the registration. No other judgment is presently pending that can be registered.

(5) Mother's annual income is $120,000; Father's annual income or earning capacity is set by the court at $130,000. Father was served with the Petition requesting support in October, 2023. Mother incurs costs of approximately $3,000 to see the children in France each trip.

) LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 2

(6) The things alleged in paragraph 10 of the Mother's amended petition are found by the court to be accurate. Among these are the following findings: Father violated this court's October 11, 2022 Temporary Protective Order of Restraint by taking the children to France and secreting them from Mother in July of 2023; Father has denied Mother virtually all parenting time since the abduction; until the abduction, Mother has always been the children's primary caregiver; and it is in the best interests of the children that mother be awarded custody.

NOW THEREFORE, IT IS HEREBY ADJUDGED:

(1) Sole custody of the children is awarded to Mother.

(2) Parenting time is awarded to Father according to the attached "Parenting Plan Exhibit 1." Father's parenting time will be expanded once he meets the criteria in the attached "Detailed Terms and Conditions." The expansion, which will replace the parenting time set out in the "Parenting Plan Exhibit 1," will be as follows:

- The first weekend of each month from 6:00 p.m. Friday until 6:00 p.m. Sunday
- Winter Break: Father shall have parenting time for one week of school Winter Break every year with the week including Christmas Day in Odd-numbered years
- Spring Break: Father shall have parenting time for Spring Break in Even-numbered years
- Thanksgiving Break: Father shall have parenting time for Thanksgiving Break in Even-numbered years

LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 3

Verified Correct Copy of Original 12/28/2023.

- Holiday Weekends: There will be no planned holiday weekend parenting time unless both parties agree to it in writing. Holiday weekends include: Martin Luther King, Jr. Birthday, President's Day, Memorial Day, and Labor Day.
- Child's Birthday: Father shall have the option to have parenting time for the children's birthday in Even-numbered years.
- Summer Vacations: Father shall have parenting time with the children for Four Weeks, exercised in Two 2-week blocks, separated by at least one week with Mother. Before April 1 of each year, Father shall notify Mother, in writing, of the dates chosen for summer parenting time. Mother has the right to choose the dates for Father's summer parenting time if Father does not give notice before April 1. Father's summer parenting time shall end at least seven days before the children's first day of school.
- Phone Calls:
  - Father will have phone calls twice per week with the children for up to 30 minutes between the hours of 4pm and 8pm PST when the children are with Mother. Regular times and days will be determined by Mother to allow for extracurricular activities.
  - Mother will have phone calls twice per week with the children for up to 30 minutes when Father is exercising his parenting time.

(3) Father will observe the following rules when he is exercising his parenting time with the children:

1. Father will not consume drugs or alcohol while he is exercising his parenting time

LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 4

2. Father will not have a member of the opposite sex who is not related to them by blood or marriage stay overnight.

3. Father must have Children home by 8pm on school nights and by 9pm on weekend nights unless specifically agreed upon by both parents in writing via email prior to the extended time outside the home.

(4) Mother does not request, and based on Father's conduct herein, the Court does not order that Father receive the benefit of the provisions included in ORS 107.154 i.e. the rights generally available to noncustodial parents in the State of Oregon.

(5) Pursuant to ORS 107.164, Father should have a continuing responsibility to:

(a) Provide his home (not just mailing) address; home, work, and mobile telephone numbers; and email address to Mother; and

(b) Each parent shall have a responsibility to notify the other party of any emergency circumstances or substantial changes in the children's health.

(c) Based on Father's conduct herein, and his disregard of court orders to the detriment of Mother, Mother shall have no duty to provide her exact home address, or her home, work, and mobile telephone number to Father, except as she chooses.

(6) Pursuant to ORS 107.159, neither parent may move to a residence that is more than 60 miles further distant from the other parent without giving the other parent reasonable notice of the change of residence and providing a copy of such notice to the court.

(7) Child support, in conformance with Oregon's Uniform Child Support Guidelines, is $990.00 monthly, payable by Father to Mother. Mother incurs approximately $3,000 in order to visit the children in airfare, lodging, and meals in France, where the children are currently

LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 5

located, in violation of this court's orders. There is a basis to depart from guideline support to include those airfare, lodging, and meals costs as support herein as well to ensure that Mother is able to exercise consistent parenting time until such time as Father complies with this court's orders. Father shall pay to Mother the amount of support that is in conformance with the Guidelines, plus the rebuttal factors above, for a total monthly cash support obligation of $3,990 per month. Support should be paid in accordance with a wage withholding order as required by ORS Chapter 25. The Department of Justice should provide collecting, accounting, distribution, and enforcement services in accordance with the provisions of ORS 25.020. All support payments due prior to the Department of Justice providing these services should be made directly to the parent entitled to receive the support. All support payments due after the Department of Justice begins providing these services should be paid through the Division of Child Support, Department of Justice, P.O. Box 14506, Salem, Oregon 97309. Each party should notify the Department of Justice, Child Support Program, P.O. Box 14506, Salem, Oregon 97309, of any changes in that party's home or business address within ten (10) days after such change.

(8) Father departed to France with the minor children, in the court's view, criminally, and accordingly the dependency exemption on account of the parties' children shall be claimed by Mother for 2023 and 2024. In any other future year, the dependency exemptions shall be shared in accordance with federal and state tax regulations.

(9) Father shall comply with the following additional provisions:

1. Father should immediately pay for past travel expenses, lodging and meals to and from France for Mother to see children in the amount of $2,945.00.

) LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 6

Verified Correct Copy of Original 12/28/2023.

(10) Father shall provide health insurance for the children. The obligation to provide health insurance for Eva and Juliette should be set in conformance with Oregon's Uniform Child Support Guidelines. The following additional provisions must be complied with:

(a) Father shall provide Mother with the name and address of the insurer, the policy number, and claim forms, and should fully cooperate in making claims on said policy. This includes an affirmative duty to promptly advise the other parent whenever there is a change in provider or coverage. A copy of the policy and any explanation of benefits paid by the insurer should be provided upon request.

(b) Benefit Payments -- All insurance claim forms should be marked to instruct the insurer to pay benefits directly to the care provider rather than to either parent. Any reimbursement checks issued by the insurance company should be the property of the party who actually paid money out-of-pocket for the charge for which the reimbursement is being paid. The non-paying parent should turn over any reimbursement checks that party may receive to the paying parent within five (5) days of receipt.

(c) Utilization of Coverage -- The terms of the actual policy of insurance should be controlling on any issues that may arise as to the eligibility of a child for coverage under the terms of the insurance. The terms of the available health insurance may require that a child sees medical care providers other than those the child currently sees. Each party should utilize available health insurance to the fullest extent possible. Any expense that could have been covered by available health insurance but was not because a party did not properly utilize available health insurance should not be considered a reasonable expense that the other parent would need to pay a part of.

LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 7

(d) Uninsured Health Care Costs -- Each parent should pay one-half of all of Eva and Juliette's reasonably incurred medical, optical, hospital, dental, prescription, counseling, and orthodontic expenses that are not covered by insurance so long as the child for whom the expense is incurred qualifies to receive child support. This does not include ordinary expenses such as bandages, non-prescription medication, and co-pays for doctor's well visits. It is the responsibility of the parent who incurs an uninsured expense to promptly request payment from the other parent of any such expenses. The obligated parent should make reimbursement to the other parent within thirty (30) days of receipt of the payment request and proof that the claim has been submitted to insurance and the insurance company has paid or rejected the claim.

(11) Father has repeatedly harassed Mother's place of work, private businesses, court staff, family members and friends. Father should be restrained from contacting via email, telephone, letter or in person Mother's place of work, insurance or utility companies, banking or financial entities unless through a lawyer competent to practice law in this state. Father is restricted from contacting mother by phone, email or other written communication, or in person unless through a lawyer of this state unless it is in direct relation to parenting time, or medical, dental orthodontics insurance, treatment or appointments. Except to exchange the children as set out by the parenting plan, Father is not allowed to appear without the consent of Mother at Mother's home, place of work or any other location where Father is aware Mother will be present unless previously arranged in writing via email with both Father and Mother agreeing.

(12) Mother is currently providing 1000 Euros to father per month to support the children while they are being held in France against this court's orders. Father should immediately

, LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 8

repay all past child support funds provided by Mother starting in September 2023 and immediately reimburse any future child support fund transfers made by Mother until Father complies with court orders and returns the children to Mother. There are no other pending child support proceedings in this state or any other state.

(13) Father should pay Mother's attorney fees and costs, as authorized by ORS 107.105(1)(j), ORS 109.103, ORS 109.811. Mother shall submit a fee petition as provided by ORCP 68.

<div align="center">MONEY AWARD #1 – RETROACTIVE SUPPORT</div>

| | |
|---|---|
| Judgment Creditor: | Heidi Brown |
| | 2256 Abbott Avenue |
| | Ashland, OR 97520 |
| | Phone: 541-944-2066 |
| Judgment Debtor: | Arnaud Paris |
| | 13 rue Ferdinand Duval |
| | Paris, France |
| Other information debtor: | *See* UTCR Confidential Information Form |
| Judgment Amount: | $12,870, due upon entry of judgment |
| Interest: | 9% annual interest on each payment as it becomes due |
| Accrued Arrears: | None |

<div align="center">MONEY AWARD #2 – CHILD SPPORT</div>

| | |
|---|---|
| Judgment Creditor: | Heidi Brown |

LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 9

Verified Correct Copy of Original 12/28/2023

Verified Correct Copy of Original 12/28/2023

|  |  |
|---|---|
|  | 2256 Abbott Avenue |
|  | Ashland, OR 97520 |
|  | Phone: 541-944-2066 |
| Judgment Debtor: | Arnaud Paris |
|  | 13 rue Ferdinand Duval |
|  | Paris, France |
| Other information debtor: | *See* UTCT Confidential Information Form |
| Judgment Amount: | Child Support of $3,990 monthly, due on January 1, 2024, and continuing on the 1st day of each month thereafter payable until the children have reached age 18 or, if they continue attending school, until they have reached age 21. |
| Interest: | 9% annual interest on each payment as it becomes due |
| Accrued Arrears: | $2,950 |

David J. Orr
Circuit Court Judge

11-28-2023

12-28-2023

LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD SUPPORT; AND MONEY AWARDS - 10

Verified Correct Copy of Original 12/28/2023

10

11

12                            UTCR CERTIFICATE OF READINESS

13         This judgment is ready for judicial signature because it presented in open court with the

14 parties present.

15

16

17

18                                          _____

19                                 Heidi Brown
                                Petitioner

20                                 Date: _12/28/2023_

21

22

23

24

25

26

27

28             LIMITED JUDGMENT FOR CUSTODY, PARENTING TIME, AND CHILD
SUPPORT; AND MONEY AWARDS - 11

Verified Correct Copy of Original 12/28/2023.

Heidi Brown
2256 Abbott Avenue
Ashland, OR 97520
Telephone: (541) 944-2066
Email: heidimparis@gmail.com

Plaintiff, pro se

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

In the Matter of:

| | |
|---|---|
| IN THE MATER OF HEIDI BROWN,<br><br>        Petitioner,<br><br>vs.<br><br>ARNAUD PARIS,<br><br>        Respondent | Case No.: 22DR17285<br><br>ADDITIONAL TERMS & CONDITIONS IN THE AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT |

The ADDITIONAL TERMS & CONDITIONS in the AMENDED PETITION FOR

DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY,

PARENTING TIME, AND CHILD SUPPORT should be included as part of the Limited

ADDITIONAL TERMS & CONDITIONS IN THE AMENDED PETITION FOR DISSOLUTION OF DOMESTIC
PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 1

Verified Correct Copy of Original 12/28/2023.

Judgment in the AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT due to the risk of harm to Children and to ensure Children's safety and regular access to Mother.

<div align="center">FINDINGS OF FACT</div>

1. Respondent (Father) has deprived Petitioner (Mother) of virtually all parenting time since July 23, 2023, pursuant to the ORDER RE CONTACT [EXHIBIT 1- Order RE Contact]. Father knowingly violated an active TPOR status Quo Order issued by this court restricting the children to the State of Oregon and absconded with them to France on or about July 22, 2023 - [EXHIBIT 2 - TPOR Status Quo] despite the additional ruling from the Oregon Supreme Court upholding the continuing validity of the TPOR several weeks earlier [EXHIBIT 3- Oregon Supreme Court Ruling July 11, 2023].   Father misrepresented the status of the registration of the French judgment as well as the TPOR to French Consular authorities [EXHIBIT 4 - Letter from Consulate], Customs and Border Patrol.

2. Due to the Father's history of violating an active TPOR and parenting time orders issued by this court, as well as lying to authorities, Father should be considered a clear risk of parental abduction.

<div align="center">ADDITIONAL TERMS & CONDITIONS</div>

ADDITIONAL TERMS & CONDITIONS IN THE AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 2

Verified Correct Copy of Original 12/28/2023

Due to the high-risk nature of the situation and Father's willingness to break criminal statutes, Father should only be allowed the parenting time detailed in the attached PARENTING PLAN EXHIBIT 1 after the following Terms and Conditions are met:

1. A final General Custody and Parenting Time judgment is made in the State of Oregon.

2. The final Oregon Custody and Parenting Time judgment is registered and enforced in France as well as all other states and counties where Father registered the French custody judgment and any other counties, states, or countries where Father has commenced court proceedings related to Custody and Parenting Time.

3. No other duplicative or frivolous custody proceedings initiated by Father are pending in France, in this state or in any other state, county or jurisdiction.

4. No other custody judgments are active and valid in any other state, county, country or jurisdiction.

5. A determination is made by a licensed psychologist from Jackson County that Father poses no physical or psychological risk to the children and this determination is confirmed by the court.

6. A determination is made by a licensed psychologist from Jackson County that Father no longer poses a risk of parental abduction and this determination is confirmed by the court.

7. A determination is made by this court that Father no longer poses a risk of abducting the children.

ADDITIONAL TERMS & CONDITIONS IN THE AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 3

Verified Correct Copy of Original 12/28/2023

8. Father has established a permanent place of residence that can adequately and safely accommodate the children. Specifically, Father's residence includes a separate bedroom for the children in a safe environment.

9. During father's visitation time, father is required to pay for all travel, lodging and meals to exercise parenting time.

10. Father must not be facing criminal charges relating to the children in this state or any other state, territory, France or any other country.

11. Father has posted a bond for $150,000, payable to mother, in the event that father takes the children out of Oregon in violation of the parenting plan. In case of dispute between the parties, the court will have jurisdiction to choose the entity that secures the bond and to rule in forfeiture.


After father has met these conditions and unless Mother provides express consent in writing, the children will be restricted to the State of Oregon while Father is exercising his parenting time. Mother's consent may be conditional on father agreeing to a predetermined amount of time with a specified destination and return date and time and agreed upon by Mother prior to their removal from the State of Oregon.


Dated:

_____
Heidi Brown, pro se

ADDITIONAL TERMS & CONDITIONS IN THE AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 4

Verified Correct Copy of Original 12/28/2023.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ADDITIONAL TERMS & CONDITIONS IN THE AMENDED PETITION FOR DISSOLUTION OF DOMESTIC
PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 5

<div style="writing-mode: vertical">Verified Correct Copy of Original 12/28/2023._</div>

(Option A - Supervised)

## IN THE CIRCUIT COURT OF THE STATE OF OREGON
### FOR THE COUNTY OF __Jackson__

| | | |
|---|---|---|
| **Petitioner** __Heidi Marie Brown__ | ) | |
| | ) | CASE NO: 22DR17285 |
| and | ) | |
| | ) | **PARENTING PLAN** |
| **Respondent** __Arnaud Paris__ | ) | **Exhibit 1** |

1.     **The Parties.** Petitioner and Respondent are the parents of:

| Full Name | Date of Birth |
|---|---|
| Eva Lilie Paris | January 15, 2015 |
| Juliette Manon Paris | January 15, 2015 |
| | |
| | |

They shall be collectively referred to as "the children" throughout this parenting plan.

The residential parent is the parent with whom the children live most of the time and who also has legal custody of them.

Petitioner shall hereafter be referred to as the (check one):      [x] Residential parent
[ ] Non-residential parent

Respondent shall hereafter be referred to as the (check one):    [ ] Residential parent
[x] Non-residential parent

2.     **Parenting Time.** (choose only one):

    [ ]    **No Parenting Time.** The non-residential parent shall have no contact with the children until further court order. All parenting decisions shall be made by the residential parent.

    [x]    **Supervised Parenting Time.** Whenever the children are with the non-residential parent, the supervisor shall be present. The non-residential parent has the right to spend time with the children even though the residential parent will be making most, if not all, of the parenting decisions which need to be made on the children's behalf. The children shall be with the non-residential parent on any schedule agreed to between the parents, but not less than is set forth in the following supervised schedule (choose only one):

        [x]   __4__    hours per week. The place(s), day(s), and time(s) shall be set by the residential parent.
        [ ]   From _____ __m. to _____ ____m. on the following day(s):_____

Verified Correct Copy of Original 12/28/2023.

3.  **Supervisor.** The person supervising the parenting time shall (choose only one):

    [X]  Be selected by the residential parent.

    [ ]  Be selected by the non-residential parent, subject to the residential parent's prior approval.

4   **Access to Activities and Events.** The non-residential parent (choose only one):

    [X]  Shall not attend the children's school activities and athletic events.

    [ ]  May attend the children's school activities and athletic events.

5.  **Child Safety.** The non-residential parent shall follow the safety rules check below. If the non-residential parent violates any of the rules below, the residential parent may seek the court's help through a contempt action. In addition, if the violation poses an immediate threat to the child(ren), the specific parenting time may be stopped.

    (Check all safety rules that apply):

    [X]  There shall be no firearms in the non-residential parent's home, car or in the children's presence during parenting time.

    [X]  The non-residential parent shall not consume alcoholic beverages beginning 12 hours before the children arrive up to the point they are returned to the residential parent.

    [X]  The children shall not be physically disciplined.

    [ ]  The following person(s) present a danger to the children and shall not be present during parenting time _____.

    [X]  The non-residential parent shall not be under the influence of intoxicating liquor or a controlled substance (e.g. drugs) as said terms are defined in ORS 813.010 during any period of time that he or she is to be with the children.

    [ ]  Other:
    _____
    _____

6.  **Location.** The nonresidential parent shall spend his/her parenting time with the child(ren) at the following location(s):

    [X]  Supervised visitation center.

    [X]  _____ (location) or any other location designated by the residential parent.

    [ ]  Any location designated by the nonresidential parent with approval by the supervisor.

Page 2 of 3 - SAFETY FOCUSED PARENTING PLAN (Option A - Supervised) [Rev 6/03]

_Verified Correct Copy of Original 12/28/2023._

7.  **Exchange Point.**  The exchange of the child(ren) shall occur at (Choose all that apply):

    [x]  The site of the supervised visit.
    [x]  Other (describe)___Mother's Home_____.
    [ ]  The nonresidential parent may not come to the exchange point.

8.  **Transportation**.  The residential parent or other person chosen by the residential parent shall be responsible for transporting the child(ren) to the exchange point.  The child(ren) shall be picked up and/or returned to the exchange point by (choose only one):

    [x]  The nonresidential parent with the supervisor present.
    [ ]  The supervisor alone.

    The child(ren) shall not be driven in a car unless the driver has a valid driver's license, auto insurance, seat belts, and child safety seats as required by Oregon law.

9.  **Communication with the Children**.  The non-residential parent (check all that apply):

    [ ]  Shall not telephone, write, or email the children unless the contact is agreed to in advance by the residential parent.
    [ ]  May write or e-mail the children at any time.  Each parent shall provide a contact address (and e-mail address if appropriate) to the other parent.
    [X]  May call the children on the telephone __2__ times per week.  The call shall last no more than 15 minutes and shall take place between __6__ _p_.m. and __8__ _p_.m.  Long distance telephone calls made by the children shall be paid for by the parent receiving the call.  Each parent shall provide a telephone number to the other parent.

10. **Changes to the Parenting Plan.**  A specific parenting time may be denied due to the safety concerns listed in Paragraph 5.  Changes to the parenting plan are allowed whenever both parents agree to a change.  Agreed upon changes will be temporary and will be enforced by the court only if the change is written down, is dated, signed by both parents before a notary public and submitted to the court leaving a space for the judge's signature.  See ORS 107.174.

11. **This is part of a Court Order when attached to a _signed_ Judgment.**  Each party has been put on notice that an intentional failure to follow the rules of this parenting plan is punishable through the contempt powers of the court.  One parent's failure to comply with the rules does not excuse the other party from following the rules.

12. **Signature(s)**

    Your signature below indicates that you have read and agree with what has been decided and written in this document.

    Petitioner:   Heidi M. Brown                    [ ] Respondent        [ ] Co-Petitioner

    _____              _____
    Signature _Mut L/2_  Date  12/11/2023         Signature              Date

Rev 6/03
Source  \Parenting Plans\SFPPWG\Version-4\ParentingPlanOptionA-Ver04 6-23-03 wpd

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

22DR17285

Verified Correct Copy of Original 12/28/2023._

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF JACKSON

Family Law Department

In the Matter of:

Heidi Brown,

                    Petitioner,

      and

Arnaud Paris,

                   Respondent.

)
)
)
)
)
)
)
)
)
)

Case No.: 22DR17285
Related Case No.: 23DR08269

**ORDER RE: CONTACT**

**THIS MATTER** came before the Court for hearing on June 21, 2023. Petitioner Heidi Brown appeared in person and her attorney, Taylor L. M. Murdoch, of her attorneys Buckley Law, PC, appeared remotely. Respondent Arnaud Paris appeared in person, and his attorney Thomas Bittner, of his attorneys Schulte Anderson, appeared remotely.

The Court, having received argument from counsel and the parties, and fully advised in the premises, makes the following

FINDINGS OF FACT

1. Mother and Father are the unmarried parents of two minor children, Eva and Juliette Paris, age 8.

Page 1 – **ORDER**

DocuSign Envelope ID: 81FDED11-437E-4778-8601-CFA545BBDF97

Verified Correct Copy of Original 12/28/2023.

2. A *Temporary Protective Order of Restraint* was signed on October 7, 2022. The *Temporary Protective Order of Restraint* remains in full force and effect. The parties exchange the children on Sundays.

3. The Court's findings on the record of June 21, 2023 as reflected in Exhibit 1 are incorporated herein as if fully set forth.

NOW THEREFORE, IT IS HEREBY ORDERED:

1. *Calls.* Whenever the children desire to call the parent with whom they are not having parenting time, the parent with whom they are with will facilitate such a call. In addition, there will be two points during the week where either parent can call and do a check-in and speak with the children, at 7:30 pm Pacific Standard Time, on Tuesdays and Thursdays.

2. *Discussing the Case.* Neither parent will discuss the pending litigation with the children.

8/3/2023 2.03:14 PM

_____

**Circuit Court Judge David J. Orr**

UTCR 5.100 CERTIFICATE OF READINESS: This proposed order is ready for judicial signature because _opposing counsel agreed to file objections independently._

**DATED** this ____ of June, 2023.

8/3/2023

**BUCKLEY LAW, P.C.**

By: *Taylor Murdoch*
5B304B810319486

Taylor L. M. Murdoch, OSB No. 111307
tlm@buckley-law.com
of Attorneys for Mother

Page 2 – **ORDER**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

**CERTIFICATE OF SERVICE:**    I certify that I served on July 31, 2023, a complete and exact copy (true copy) of this *Order Re: Contact* on the parties or their representative(s) by hand delivering a true copy to the following address, as follows:

**Thomas A Bittner**
**Schulte Anderson**
**811 SW Naito Pkwy Ste 500**
**Portland OR  97204**

DATED this 31 day of July, 2023.

BUCKLEY LAW P.C.

By: _____

Taylor L. M. Murdoch, OSB #111307
tlm@buckley-law.com
of Attorneys for Mother

Page 3 – **ORDER**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

DocuSign Envelope ID: 81FDED11-437E-4778-8601-CFA545BBDF97

Verified Correct Copy of Original 12/28/2023.

Page 1

1          IN THE CIRCUIT COURT OF THE STATE OF OREGON

2                  FOR THE COUNTY OF JACKSON

3

4    In the Matter of:          )

5    HEIDI MARIE BROWN,         )

6              Petitioner,      )

7       and                     ) Case No. 22DR17285

8    ARNAUD PARIS,              ) Case No. 23DR08269

9              Respondent.      )

10

11

12              **EXCERPT OF PROCEEDINGS**

13                  Pages 1 to 9

14

15

16          BE IT REMEMBERED THAT on June 21, 2023, the

17    above-entitled case came on regularly for hearing before

18    The HONORABLE DAVID J. ORR, a Circuit Court Judge.

19

20    APPEARANCES:

21        Taylor LM Murdoch, Appearing via Webex
          Attorney at Law
22        Representing the Petitioner

23        Thomas A. Bittner, Appearing via Webex
          Attorney at Law
24        Representing the Respondent

25                         -:-

            LEE BERGER & ASSOCIATES, INC.
               Certified Court Reporters
                    (503) 747-5706



DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

_Verified Correct Copy of Original 12/28/2023._

```
1              E X C E R P T   O F   P R O C E E D I N G S

2

3              THE COURT:  Do either -- Mr. Bittner, you

4    were trying to address this issue?

5              MR. BITTNER:  Yeah, Your Honor.  Look,

6    these -- they've exchanged the kids successfully for --

7    you know, since last October.  I think we should let

8    them be.  And I want to object to you modifying your

9    status quo order.  I've explained to you that any effort

10   you make to alter what's going on is in contravention to

11   the judgment in France, and you don't have modification

12   jurisdiction.  So I'm just making a record.  I'm

13   pointing it out.  You're going to do what you want to

14   do.  I get it.  So, you know --

15             THE COURT:  You've made the record multiple

16   times.  That's not what I was asking.  I was asking for

17   your proposal in terms of how to address the problem

18   that is, that is at hand here.  Yeah, I understand that

19   you believe Oregon doesn't have jurisdiction.  That may

20   well be the case.  As of now, that has not been

21   determined.  I will make such orders as are necessary

22   that are in the best interests of the children.

23        Let's talk about what we're going to do here with

24   regards to the parents talking to the children,

25   Mr. Bittner.
```

DocuSign Envelope ID 81FDED11-437E-4778-8801-CFA545BBDF97

Verified Correct Copy of Original 12/28/2023.

1              MR. BITTNER:  I guess my point is, what have

2    they historically done this past year?  It seems to have

3    been fine.  So I don't know that the Court needs to

4    intervene.  They may be going through a rough patch,

5    but, you know, this was not the form, the time, the

6    place.  You know, I don't know that there is a problem.

7    They've never complained to me -- or my clients never

8    complained to me that the kids haven't been able to

9    communicate with him or the kids with their mother.

10             There have been a lot of complaints from my

11   client about things that the girls repeat to him that

12   mom says that are really, really bad, and so, you know,

13   there is some concern of that.  But the Court has

14   chastised both parties and grandparents and whatnot to

15   shield the kids, and that's, you know, standard and

16   appropriate advice, and I told my client to follow it,

17   and I'm sure that Mr. Murdoch has done the same.  So

18   they've been told what to do.  They need to make the

19   kids available if the kids want to communicate.  And,

20   you know, if there needs to be a midweek check in, they

21   -- whatever.  I understand.

22             But, but I discourage you from making orders that

23   are in modification.  That's a whole different issue

24   than what I said before about this Court not having

25   jurisdiction to make an initial determination.  Now

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

_ Verified Correct Copy of Original 12/28/2023._

1    you're making a modification.

2         So I'd say let them be and, you know, if

3    somebody's got a problem, they can file a motion.  But

4    jumping in and trying to --

5              THE COURT:  Well, as long --

6              MR. BITTNER:  -- do it on the fly --

7              THE COURT:  -- we're in court here, we

8    might, we might as well get these issues settled to the

9    extent that it's possible to settle them.  I'm going to

10   hear from Mr. Murdoch.

11        But, Mr. Paris, what were you trying to say?

12             MR. PARIS:  Actually, I'm the one who

13   offered the kids yesterday to call their mother.

14             THE COURT:  You were, you were the one who

15   what?

16             MR. PARIS:  I am the one who offered the

17   kids to call their --

18             THE COURT:  To what the kids?

19             MR. PARIS:  Sorry.  I am the person who told

20   the kids, "Do you want to speak to your mom?" yesterday.

21   That phone call was me suggesting to the kids to call

22   their mom.  They don't necessarily want to call their

23   mom every day, nor do they want to talk to her every

24   day.  You know, they're doing lots of fun things.  I am

25   the one that was saying to the kids, Do you want to call

DocuSign Envelope ID. 81FDED11-437E-4778-8601-CFA545BBDF97

_Verified Correct Copy of Original 12/28/2023._

```
 1   your mom?  You haven't talked to her for three days.

 2   And I asked, Why do you not want to talk to her every

 3   day?  They said, When we're with you, we don't really

 4   want to talk to mom, and when we're, when we're with

 5   mom, we don't really want to talk to you.  Because last

 6   week they called me once.  One of them called me once.

 7   That's it.  I don't get to speak to them every day.  And

 8   frankly, I don't want to fault them.  If they don't want

 9   to talk to me when they're with mom, that's fine.  I

10   suggested that they call their mom yesterday, and they

11   said okay.  Sometimes I suggest and they say no.  I

12   don't think we should fault these kids.  That's what I'm

13   saying.  Even if mom wants to talk to them every day, if

14   they don't want to talk to their mom, I don't think we

15   should fault them, fault them.

16                THE COURT:  What is the exchange day?  What

17   day of the week?

18                MR. PARIS:  It's, it's Sunday.

19                THE COURT:  All right.  Mr. Murdoch,

20   anything on all this before I do something?

21                MR. MURDOCH:  Thank you, Your Honor.

22        Let's just make sure these kids talk to their

23   parents and make sure this is not something where a

24   parent is suggesting one way or the other or is somehow

25   leading -- leaving it to an eight-year-old's
```

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

_ Verified Correct Copy of Original 12/28/2023._

1    determination.  Let's get an order in place saying these

2    kids have to talk to, talk to mom during dad's time and

3    they have to talk to dad during mom's time.  Let's set a

4    date -- or rather, let's set a time when this happens.

5    It can be every other day.  But let's make sure -- and

6    an order also directing the parties not to discuss these

7    matters with -- this case with the children.  I think

8    that's a straightforward thing that protects these kids

9    and gets them through to the next hearing.

10            THE COURT:  It does sound like we need to

11   make some kind of an order.  So here's what it'll be.

12            First of all, and I think both mother and father

13   are agreeable to this, that the children, whenever they

14   desire, are permitted to call the parent that they are

15   not with, meaning if they're with dad, if they --

16   whenever they want to call mom, they get to call mom; if

17   they're with mom, whenever they want to call dad, they

18   get to call dad, and further, that the parent will

19   facilitate that.  Since they're eight and they don't

20   have phones, the parent will facilitate that.

21            In addition, there will two points during the

22   week where either parent can call and do a check-in and

23   talk to the kids.  My recommendation is that be, that be

24   somewhere around 7:30 in the evening.  I don't know --

25   you want to do that?  Let's see.  So you exchange

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

_Verified Correct Copy of Original 12/28/2023._

1    Tuesday -- excuse me, you exchange Sunday.  Do you want

2    to do that Tuesday and Thursday or Tuesday and Friday?

3    What are you requesting, Mr. Murdoch?

4             MR. MURDOCH:  Your Honor, I think what the

5    Court is suggesting, on Tuesday and Friday, makes sense.

6    Friday may actually be problematic just because

7    oftentimes families have plans on Friday evening --

8             THE COURT:  All right.

9             MR. MURDOCH:  -- for the upcoming weekend.

10   So let's make it Tuesdays and Thursdays.

11            THE COURT:  Tuesday and Thursday.  So you

12   can call at 7:30 Tuesday and Thursday.  Heidi will make

13   the kids available.

14        You can call the kids when he has them Tuesdays

15   and Thursdays at 7:30.  Mr. Paris will make the kids

16   available.

17        If they tell you they don't want to talk, you

18   tell them, Okay, you don't have to talk.  Just tell your

19   dad, or tell your mom, you don't want to talk because

20   the other parent needs to hear it from them.  All right.

21            MR. PARIS:  So I would agree with you on

22   this.  It's very good advice.  I just can't accept that

23   order.  You don't have jurisdiction, Judge.

24            THE COURT:  Okay.  You refuse --

25            MR. PARIS:  And I will (unintelligible) --

DocuSign Envelope ID. 81FDED11-437E-4776-8601-CFA545BBDF97

_Verified Correct Copy of Original 12/28/2023._

1    THE COURT:  -- the Court's orders at your

2    peril.

3    MR. PARIS:  No.

4    THE COURT:  So I'm going --

5    MR. PARIS:  I'm just saying that I will, I

6    will challenge that order in Supreme Court.

7    THE COURT:  Okay.  Well, go ahead and do

8    that.  I'm saying it would be not a good idea, and I

9    think even your attorney would not recommend that you

10   disobey the Court's orders at this point until --

11   MR. BITTNER:  Yeah.

12   THE COURT:  -- you have your Supreme Court

13   order telling you otherwise.

14   Also, Mr. Murdoch, as you were suggesting the

15   language about neither parent discussing the case with

16   the children is very appropriate and apparently

17   necessary here.  So that's where we are.

18   Anything else that we have to put on the record

19   before we adjourn?

20   [END OF EXCERPT:  3:10 PM]

21

22

23

24

25

LEE BERGER & ASSOCIATES, INC.
Certified Court Reporters
(503) 747-5706

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

_Verified Correct Copy of Original 12/28/2023._

```
 1              C E R T I F I C A T E

 2

 3          I, Terri Forsyth, a transcriptionist in the

 4   state of Oregon, do hereby certify that I reported in

 5   stenotype the foregoing audio recorded proceedings had

 6   upon the hearing of this matter previously captioned

 7   herein; that I thereafter reduced my said stenotype

 8   notes to typewriting; and that the foregoing transcript,

 9   Pages 1 to 9, both inclusive, constitutes a full, true

10   and accurate record of said audio recorded proceedings

11   to the best of my knowledge, ability, belief, and

12   quality of the recording.

13          Witness my hand as transcriptionist at Portland,

14   Oregon, this 24th day of June, 2023.

15

16

17

18

19

20

21

22

23                          Terri Forsyth
                            Terri Forsyth
24                          Transcriptionist

25
```

LEE BERGER & ASSOCIATES, INC.
Certified Court Reporters
(503) 747-5706

Verified Correct Copy of Original 12/28/2023.

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

| | |
|---|---|
| IN THE MATTER OF: ) | |
| HEIDI MARIE BROWN, ) | CASE NO.  22DR17285 |
| ) | |
| PETITIONER, ) | **TEMPORARY PROTECTIVE ORDER OF** |
| ) | **RESTRAINT** |
| and ) | (Pre-Judgment Status Quo – ORS 107.097) |
| ) | |
| ARNAUD PARIS, ) | |
| ) | |
| RESPONDENT. ) | |

This matter came before the court on Petitioner's ex parte motion for a temporary protective order of restraint. Based upon Petitioner's declaration and the other documents on file herein, the court hereby finds the following:

1.      The parties' minor children are Eva Lilie Paris (7) and Juliette Manon Paris (7).

2.      Their children's usual place of residence is with Petitioner at 665 Leonard St., in Ashland, Oregon.

3.      Their children are currently enrolled and attend school at Bellview Elementary School in Ashland, Oregon.

4.      Both parties exercise parenting time with their children on a roughly equal basis.

THEREFORE, IT IS HEREBY ORDERED that Petitioner and Respondent are restrained from the following:

1.      Changing their children's usual place of residence at 665 Leonard St., in Ashland, Oregon;

2.      Interfering with the present placement and daily schedule of their children, which includes attending school at Bellview Elementary School in Ashland, Oregon;

TEMPORARY PROTECTIVE ORDER OF RESTRAINT (Pre-Judgment Status Quo – ORS 107.097)
Page 1 of 3

Verified Correct Copy of Original 12/28/2023

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

3.      Hiding or secreting their children from the other party;

4.      Interfering with the other party's usual contact and parenting time with their children which is on a roughly equal basis;

5.      Leaving the state with their children without the written permission of the other party or the permission of the court; and

6.      In any manner disturbing the current schedule and daily routine of the child until custody or parenting time has been determined or the parties otherwise agree in writing.

10/11/2022 4:15:55 PM

Circuit Court Judge David J. Orr

TEMPORARY PROTECTIVE ORDER OF RESTRAINT (Pre-Judgment Status Quo – ORS 107.097)
Page 2 of 3

CARTY LAW, P.C.
P.O. Box 4628, Salem, Oregon 97302
office@cartylawpc.com | (503) 991-5142 | www.cartylawpc.com

**Verified Correct Copy of Original 12/28/2023.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UTCR 5.100 Certificate of Readiness**

This proposed order is ready for judicial signature because service is not required by stature, rule, or otherwise.

DATED:  10/07/2022

CARTY LAW, P.C.

_____

Sarah Bain, OSB No. 202594
Email: sarah@cartylawpc.com
Attorney for Petitioner

* * * * * * * * * * * * * * * * * * *

**NOTICE**

You may request a hearing on this order as long as it remains in effect by filing with the court a request for a hearing. In the request you must tell the court and the other party that you object to the order and specifically why you disagree with the representation of the status quo described in the order. In the request you must also inform the court of your telephone number or contact number and your current residence, mailing, or contact address.

TEMPORARY PROTECTIVE ORDER OF RESTRAINT (Pre-Judgment Status Quo – ORS 107.097)
Page 3 of 3

_Verified Correct Copy of Original 12/28/2023._

# IN THE SUPREME COURT OF THE STATE OF OREGON

**HEIDI MARIE BROWN,**
Petitioner-Adverse Party,

v.

**ARNAUD PARIS,**
Respondent-Relator.

Jackson County Circuit Court
22DR17285

S070246

## ORDER DENYING PETITION FOR PEREMPTORY WRIT OF MANDAMUS AND DENYING MOTION TO VACATE

Upon consideration by the court.

The petition for peremptory writ of mandamus is denied without prejudice.

The emergency motion to vacate the trial court's October 11, 2022, status quo order is denied as moot.

MEAGAN A. FLYNN
CHIEF JUSTICE, SUPREME COURT
7/11/2023  4:28 PM

---

## DESIGNATION OF PREVAILING PARTY AND AWARD OF COSTS

Prevailing party. Adverse Party.                    [ X ] No costs allowed.

---

c:  George W Kelly
    Arnuad Paris
    Hon  David J Orr

jr

**ORDER DENYING PETITION FOR PEREMPTORY WRIT OF MANDAMUS AND DENYING MOTION TO VACATE**

_Verified Correct Copy of Original 12/28/2023._

*Consulat Général de France*
*à San Francisco*

*Le Consul Général*




## Authorization to travel to France with two minors

The Consulate General of France in San Francisco hereby certifies that Mr. Arnaud PARIS (DOB 14 April 1978) is allowed to travel to France with his two daughters Eva Lilie PARIS and Juliette Manon PARIS both born on January 15, 2015.

A French court granted Mr. PARIS full custody over his daughters. The judgement has been regularly registered in Oregon under No. 23DR08269 and thus it became an Oregon Judgment on the day it was registered, May 9, 2023. Therefore it is an official, registered judgment entitled to full recognition and enforcement by local authorities

The Consulate General of France in San Francisco kindly asks CBP for their assistance in letting Mr. PARIS and his daughters board their flight to Paris, France.

San Francisco, July 22rd 2023

Frédéric JUNG
Consul General

44 Montgomery Street, Suite 3400, San Francisco, CA 94104
(415) 616-4906 · admin-francais.san-francisco-fslt@diplomatie.gouv.fr

Verified Correct Copy of Original 12/28/2023.

Heidi Brown
2256 Abbott Avenue
Ashland, OR 97520
Telephone: (541) 944-2066
Email: heidimparis@gmail.com

Plaintiff, pro se

# IN THE CIRCUIT COURT OF THE STATE OF OREGON

# FOR THE COUNTY OF JACKSON

In the Matter of:

| | |
|---|---|
| HEIDI BROWN, | Case No.: **22DR17285** |
| Petitioner, | |
| vs. | |
| ARNAUD PARIS, | AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT |
| Respondent | |

Petitioner, who at the November 14, 2023 hearing was given leave by the court to amend her pleadings, hereby alleges the following:

## 1. Domestic Partnership

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 1

Verified Correct Copy of Original 12/28/2023

Petitioner (hereafter Mother) and Respondent (hereafter Father) have been in an unregistered domestic partnership for the past nine years.

## 2. Grounds

Irreconcilable differences between the parties have caused the irremediable breakdown of their domestic partnership.

## 3. Jurisdiction

At the time of filing, neither party had resided in the United States for a period of (6) months immediately prior to filing the original Petition for Dissolution. Therefore, there was no home state for the children under ORS 109.741(1)(a). However, jurisdiction is proper under ORS 109.741(b) because:

> (1) there is no home state,
>
> (2) the child and the child's parents, or the child and at least one parent or a person acting as a parent, has a significant connection with this state other than mere physical presence, and
>
> (3) substantial evidence is available in this state concerning the child's care, protection, training and personal relationships.
>
> (4) The court has personal jurisdiction over Father and Mother because the petition on file herein was filed in the state of Oregon and at the time of filing both parties resided in Jackson County, Oregon.

## 4. Venue

At least one party resided in Jackson County at the time of the filing of this Petition for Dissolution.

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 2

Verified Correct Copy of Original 12/28/2023.

## 5. Other Proceedings.

At the time of the original filing of this petition, Mother was not aware of any other domestic

relations suits or petitions for support pursuant to ORS 108.110 involving the parties pending in

any other court in the state of Oregon or in any other jurisdiction.

## 6. Statutory Data.

Mother's current residential address is 2256 Abbott Ave., Ashland, OR 97520. Father's current

residential address is 13 rue Ferdinand Duval, Paris, France. Additional information regarding

Mother and Father is provided on the parties' UTCR 2.130 Confidential Information Forms.

## 7. Children.

The minor children born of this domestic partnership are Eva Lilie Paris (age 8)  and Juliette

Manon Paris (age 8). Additional information regarding the children is provided on the parties'

UTCR 2.130 Confidential Information Forms.

## 8. UCCJEA.

The information required by the Uniform Child Custody Jurisdiction and Enforcement Act

(UCCJEA), under ORS 109.767, is as follows:

    (a) Eva and Juliette have lived at the following places with the following persons during

    the last five years:

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO
ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 3

Verified Correct Copy of Original 12/28/2023.

| DATE | PLACE | PERSON |
|---|---|---|
| January 2015 - March 2015 | Jackson County, OR | Both Parents |
| March 2015-August 2019 | Los Angeles County, CA | Both Parents |
| August 2019 - July 2022 | Paris, France | Both Parents |
| July 2022 - July 2023 | Jackson County, OR | Both Parents |
| July 2023 - Present | Paris, France | Father |

(b) Mother has not participated as a party, witness, or in any other capacity in any litigation concerning the custody of or parenting time or visitation with the parties' joint minor children in this state or any other jurisdiction.

(c) Jurisdiction has been determined to be proper in Jackson County, Oregon pursuant to the attached <u>ORDER RE: DISMISSAL OF RESPONDENT'S MOTION TO DISMISS</u>, and the <u>LIMITED JUDGMENT RE REGISTRATION</u> (Case No.: 23DR08269).

(d) Mother does not know of any person not a party to these proceedings who has physical custody of the parties' joint minor children or claims rights of legal custody or physical custody of, or parenting time or visitation with their children.

(e) Jurisdiction is proper under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), ORS 109.741(b), because (1) there is no home state, (2) the child and the child's parents, or the child and at least one parent or a person acting as a parent, had a

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 4

significant connection with this state other than mere physical presence, and (3) Father cannot claim extended home state jurisdiction because he had abandoned France and moved to Jackson County when the dissolution proceedings commenced.

(4) substantial evidence is available in this state concerning the child's care, protection, training and personal relationships. The relevant significant connections and evidence concerning the children's care, protection, and training are as follows:

(1) Mother, Father, Eva, and Juliette moved to Ashland, with the intent to make Ashland, Oregon their permanent home. Mother, Eva, and Juliette Arrived on July 29, 2022. Father arrived shortly thereafter on August 19, 2022.

(2) Eva and Juliette were born in Ashland in January 2015.

(3) The family moved to Los Angeles, CA, and lived there from March 2015 to August 2019.

(4) The family moved to Paris, France, in August 2019 for what was supposed to be a temporary, one-year relocation.

(5) In March 2020, the parties started collecting United States unemployment insurance benefits with plans to move back to the United States. However, due to the Covid-19 pandemic, the family stayed in France longer than anticipated.

(6) In December of 2020, Mother acquired a vacant lot with the intent to build a home for the family in Ashland. The deed was recorded in Mother's name on January 4, 2021. Additionally, Father considered purchasing vacation property on the Oregon coast for the

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 5

Verified Correct Copy of Original 12/28/2023.

Verified Correct Copy of Original 12/28/2023

anticipated move back to Oregon. The parties extensively discussed an anticipated

relocation of their home to Oregon.

(7) In March 2022, the parties agreed to move back to Ashland.

(8) Preparations for the family's move included: terminating the lease on the parties'

Paris apartment, securing a four-bedroom rental house in Ashland, researching schools in

Ashland, registering the children for summer camps in Ashland, hiring an au pair to care

for the children, and submitting applications to transfer their places of employment to the

United States.

(9) In May 2022, the parties mutually hired an au pair who signed a contract to help

provide childcare for Eva and Juliette for twelve months (through September 9, 2023) in

exchange for a weekly stipend, room and board, and the opportunity to become part of an

American family living in Ashland.

(10) Father has lived in Ashland in the past and has agreed verbally and in writing to

Mother that his relocation in 2022 was intended to be a permanent relocation to Jackson

County, Oregon.

(11) Mother was born in Ashland and has parents, siblings, extended family, and lifelong

friends in Jackson County. Mother works in marketing and prior to the move permanently

transferred her European contract to a U.S. contract. Mother owns real property in

Jackson County, owns a vehicle that is registered in Oregon, pays taxes in Oregon and the

United States, and is registered to vote in Oregon.

(12) Eva and Juliette were enrolled in and attended school at Belleview Elementary

School in Ashland until their unlawful removal in July of 2023.

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO
ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 6

Verified Correct Copy of Original 12/28/2023.

(13) Eva and Juliette have health insurance in Ashland and see a pediatrician in Ashland (i.e., the same doctor they have been seeing since 2017), an orthodontist in Medford, and a local dentist.

(14) Eva and Juliette have attended summer camp, made friends, attended play dates, and were enrolled in extracurricular activities in Ashland.

(15) On August 18, 2023, the court dismissed Father's Motion to Dismiss and can proceed with the dissolution of the domestic partnership, and to establish custody, parenting time, and child support

(16) On August 18, 2023, the court entered a Limited Judgment Re Registration (Case No.: 23DR08269), which determined that France has no jurisdiction in this matter and declined to confirm father's attempt to register a French custody order. No other judgment is pending that can be registered.

### 9. Child Support Information.

The child support information, required by ORS 107.085(2)(c), is as follows:

At the time of filing:

(a) Mother was not aware of any other child support proceedings, involving the parties' joint minor children, pending in this state or any other jurisdiction.

(b) Mother is not aware of any child support orders or judgments, involving the parties' joint minor children, existing in this state or any other jurisdiction.

### 10. Custody.

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 7

Verified Correct Copy of Original 12/28/2023.

1. On or about July 22, 2023 Father violated the October 11, 2022 TEMPORARY PROTECTIVE ORDER OF RESTRAINT (Status Quo) and removed the children from the State of Oregon and brought them to France. This order is still active and as of the date of this filing Father remains in violation of this Order.

2. Father has deprived Petitioner Mother of virtually all parenting time since July 23, 2023.

3. Additionally, Father is in violation of August 3, 2023 ORDER RE CONTACT which stated:

   "A Temporary Protective Order of Restraint was signed on October 7, 2022. The Temporary Protective Order of Restraint remains in full force and effect. The parties exchange the children on Sundays."

   As an exhibit, the ORDER RE CONTACT included a partial transcription of the June 21, 2023 hearing, wherein the court orally noted that "you exchange [the Children] Sunday."

4. When Father took the children to France, he secreted them away and would not share the location of the children for several weeks.

5. Since Father's return to France, he has had a full-time au pair who's tasks include preparing the children for school and bringing them to school, as well as picking them up from school, spending the rest of the day with them and preparing them dinner and getting them ready for bed. Because of this schedule he is not regularly involved in the children's day-to-day care.

6. Prior to the separation of Mother and Father, Mother was the primary caregiver to the children, preparing them for school and extracurricular activities, organizing social

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 8

engagements and family functions, scheduling doctors appointments, maintaining

insurance and was available and present in their lives on a consistent basis.

7. Prior to the separation of Mother and Father, Father would often leave for extended

periods for business purposes. Even when he was not traveling, Father was not involved

in the day-to-day organization, care and upkeep of the children.

8. It is in the children's best interest that Mother should have sole legal custody of the

parties' children.


## 11. Parenting Plan.

### (a) The Schedule

The court should adopt a parenting plan, as required by ORS 107.102, that serves the children's

best interests. Mother's Parenting plan is outlined below:

1. Both children will live with Mother at her home in Ashland, Oregon

2. Until Father has met the criteria detailed in the attached "ADDITIONAL TERMS AND

CONDITIONS", Father will only be allowed supervised parenting time as detailed in the

attached supervised parenting plan titled "PARENTING PLAN EXHIBIT 1".

3. Once Father has met the conditions outlined in the attached ADDITIONAL TERMS

AND CONDITIONS, Father will have parenting time according to the below schedule.

All other parenting time will be exercised by Mother.

- The first weekend of each month from 6:00 p.m. Friday until 6:00 p.m. Sunday

- Winter Break: Father shall have parenting time for one week of school Winter

Break every year with the week including Christmas Day in Odd-numbered years

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO
ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 9

- Spring Break: Father shall have parenting time for Spring Break in Even-numbered years

- Thanksgiving Break: Father shall have parenting time for Thanksgiving Break in Even-numbered years

- Holiday Weekends: There will be no planned holiday weekend parenting time unless both parties agree to it in writing. Holiday weekends include: Martin Luther King, Jr. Birthday, President's Day, Memorial Day, and Labor Day.

- Child's Birthday: Father shall have the option to have parenting time for the children's birthday in Even-numbered years

- Summer Vacations: Father shall have parenting time with the children for Four Weeks, exercised in Two 2-week blocks, separated by at least one week with Mother.

- Phone Calls:
    - Father will have phone calls twice per week with the children for up to 30 minutes between the hours of 4pm and 8pm PST when the children are with Mother. Regular times and days will be determined by Mother to allow for extracurricular activities.
    - Mother will have phone calls twice per week with the children for up to 30 minutes when Father is exercising his parenting time.

**Notice for Summer Scheduling**

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 10

Before April 1 of each year, Father shall notify Mother, in writing, of the dates chosen for summer parenting time. Mother has the right to choose the dates for Father's summer parenting time if Father does not give notice before April 1. Father's summer parenting time shall end at least seven days before the children's first day of school.

### (b) Safety and Emotional Wellbeing

Father will observe the following rules when he is exercising his parenting time with the children:

1. Father will not consume drugs or alcohol while he is exercising his parenting time
2. Father will not have a member of the opposite sex who is not related to them by blood or marriage stay overnight.
3. Father must have Children home by 8pm on school nights and by 9pm on weekend nights unless specifically agreed upon by both parents in writing via email prior to the extended time outside the home.

### (c) Contact Information.

Pursuant to ORS 107.164, each party should have a continuing responsibility to:

(1) Provide his or her home (not just mailing) address; home, work, and mobile telephone numbers; and email address to the other party; and

(2) Notify the other party of any emergency circumstances or substantial changes in the children's health.

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 11

Verified Correct Copy of Original 12/28/2023.

Verified Correct Copy of Original 12/28/2023.

**(d) Notice of Relocation.**

Pursuant to ORS 107.159, neither parent should move to a residence that is more than 60 miles further distant from the other parent without giving the other parent reasonable notice of the change of residence and providing a copy of such notice to the court.

## 12. Child Support.

The court should set child support in conformance with Oregon's Uniform Child Support Guidelines with the additional provisions included below.

(a) Place of Payment. Support should be paid in accordance with a wage withholding order as required by ORS Chapter 25. The Department of Justice should provide collecting, accounting, distribution, and enforcement services in accordance with the provisions of ORS 25.020. All support payments due prior to the Department of Justice providing these services should be made directly to the parent entitled to receive the support. All support payments due after the Department of Justice begins providing these services should be paid through the Division of Child Support, Department of Justice, P.O. Box 14506, Salem, Oregon 97309.

**(b) Notification Requirement.**

Each party should notify the Department of Justice, Child Support Program, P.O. Box 14506, Salem, Oregon 97309, of any changes in that party's home or business address within ten (10) days after such change.

**(c) Dependency Exemption.**

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 12

Unless otherwise agreed on between the parties, the dependency exemption on account of the parties' children should be claimed in accordance with federal and state tax regulations.

### d) Additional Provisions.

1. Father should immediately pay for past travel expenses, lodging and meals to and from France for Mother to see children in the amount of $2,945.00.

2. Father should continue to pay for travel, lodging and meals until Father is no longer in violation of this court's orders.

### 13. Additional Child Support Provisions. As a form of additional child support:

### (a) Health Insurance.

Father should provide and pay for health insurance for the children. The obligation to provide health insurance for Eva and Juliette should be set in conformance with Oregon's Uniform Child Support Guidelines.

(1) Plan Information. The parent providing health insurance should provide the other parent with the name and address of the insurer, the policy number, and claim forms, and should fully cooperate in making claims on said policy. This includes an affirmative duty to promptly advise the other parent whenever there is a change in provider or coverage. A copy of the policy and any explanation of benefits paid by the insurer should be provided upon request.

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 13

Verified Correct Copy of Original 12/28/2023.

(2) Benefit Payments. All insurance claim forms should be marked to instruct the insurer to pay benefits directly to the care provider rather than to either parent. Any reimbursement checks issued by the insurance company should be the property of the party who actually paid money out-of-pocket for the charge for which the reimbursement is being paid. The non-paying parent should turn over any reimbursement checks that party may receive to the paying parent within five (5) days of receipt.

(3) Utilization of Coverage. The terms of the actual policy of insurance should be controlling on any issues that may arise as to the eligibility of a child for coverage under the terms of the insurance. The terms of the available health insurance may require that a child sees medical care providers other than those the child currently sees. Each party should utilize available health insurance to the fullest extent possible. Any expense that could have been covered by available health insurance but was not because a party did not properly utilize available health insurance should not be considered a reasonable expense that the other parent would need to pay a part of.

(b) Uninsured Health Care Costs. Each parent should pay one-half of all of Eva and Juliette's reasonably incurred medical, optical, hospital, dental, prescription, counseling, and orthodontic expenses that are not covered by insurance so long as the child for whom the expense is incurred qualifies to receive child support. This does not include ordinary expenses such as bandages, non-prescription medication, and co-pays for doctor's well visits. It is the responsibility of the parent who incurs an uninsured expense to promptly request payment from the other parent of any such expenses. The obligated parent should

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 14

Verified Correct Copy of Original 12/28/2023

make reimbursement to the other parent within thirty (30) days of receipt of the payment request and proof that the claim has been submitted to insurance and the insurance company has paid or rejected the claim.

### 14. Property Division.

The court should make an equitable division of the parties' property, including the real property located on Medley Ln., in Topanga, CA 90290. If Father does not personally appear at the applicable court hearing(s), the court should adopt the terms and division of property and debts that Mother proposes at the time of the hearing(s).

### 15. Distribution of Debts.

The court should make an equitable distribution of the parties' debts. If Father does not contest this proceeding, the court should adopt the terms and distribution of debts Mother proposes at the time of the final hearing.

### 16. Protection of Mother and Children, Restraint by Father

Father has repeatedly harassed Mother's place of work, private businesses, court staff, family members and friends. Father should be restrained from contacting via email, telephone, letter or in person Mother's place of work, insurance or utility companies, banking or financial entities unless through a lawyer competent to practice law in this state. Father is restricted from contacting mother by phone, email or other written communication, or in person unless through a lawyer of this state unless it is in direct relation to parenting time, or medical, dental orthodontics insurance, treatment or appointments. Except to exchange the children as set out by the parenting plan, Father is not allowed to appear without the consent of Mother at Mother's home, place of

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 15

Verified Correct Copy of Original 12/28/2023

Verified Correct Copy of Original 12/28/2023.

work or any other location where Father is aware Mother will be present unless previously arranged in writing via email with both Father and Mother agreeing.

### 17. Certificate of Support.

Mother is currently providing 1000 Euros to father per month to support the children while they are being held in France against this court's orders. Father should immediately repay all past child support funds provided by Mother starting in September 2023 and immediately reimburse any future child support fund transfers made by Mother until Father complies with court orders and returns the children to Mother. There are no other pending child support proceedings in this state or any other state.

### 18. Attorney Fees and Costs.

Father should pay Mother's attorney fees and costs, as authorized by ORS 107.105(1)(j).

### 19. Notice Regarding Continuation of Health Coverage.

As required by ORS 107.092, notice regarding continuation of health coverage is attached as Exhibit 1.

### 20. Notice Regarding Mandatory Parent Education.

Notice regarding mandatory parent education is attached as Exhibit 2.

WHEREFORE, Mother respectfully requests a General Judgment:

1. Dissolving the parties' unregistered domestic partnership;

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 16

2. Granting the relief requested in this petition; and

3. Granting any other equitable relief, as appropriate.

## DECLARATION

I, Heidi Brown, hereby declare that I am the Petitioner in this matter and that the facts set forth by me in this Petition for Dissolution of Domestic Partnership and to Establish Custody, Parenting Time, and Child Support are true and correct to the best of my knowledge. I have read and understand the notice regarding continuation of health care coverage attached to this petition. By filing this petition, I acknowledge that I am bound by the terms of the restraining order, issued under ORS 107.093, prohibiting either party from disposing of partnership assets.

I hereby declare that the above statements are true to the best of my knowledge and belief, and I understand they are made for use as evidence in court and are subject to penalty for perjury.

DATED:

_____

Heidi Brown, Petitioner

AMENDED PETITION FOR DISSOLUTION OF DOMESTIC PARTNERSHIP AND TO ESTABLISH CUSTODY, PARENTING TIME, AND CHILD SUPPORT - 17

Verified Correct Copy of Original 12/28/2023.

22DR17285

Verified Correct Copy of Original 12/28/2023.

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF JACKSON

Family Law Department

In the Matter of:

|  |  |
|---|---|
| Heidi Brown, | )<br>) Case No.: 22DR17285<br>) Related Case No.: 23DR08269<br>) |
| Petitioner, | ) |
| and | ) **ORDER RE: DISMISSAL OF**<br>) **RESPONDENT'S MOTION TO DISMISS** |
| Arnaud Paris, | )<br>) |
| Respondent. | )<br>) |

**THIS MATTER** came before the Court for hearing on June 21, July 12-13 and 18, and August 3, 2023. Petitioner Heidi Brown appeared in person and with her attorney, Taylor L. M. Murdoch, of her attorneys Buckley Law, PC. Respondent Arnaud Paris appeared in person on June 21, July 12-13 and 18, and failed to appear on August 3, 2023. His attorney Thomas Bittner, of his attorneys Schulte Anderson, appeared remotely.

The Court, having received argument and evidence from counsel and the parties, and Mr. Paris having received notice of the hearing continuation on August 3rd, and having failed to appear, and his request to appear remotely for the continuation of the hearing from France on August 3rd having been denied on the record, and Mr. Paris and his counsel having been permitted to attend the hearing but not being permitted to present further argument or evidence, and the Court being fully advised in the premises, and good cause appearing, makes the following

Page 1 – **ORDER RE DISMISSAL OF RESPONDENT'S MOTION TO DISMISS**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

## FINDINGS OF FACT

1. Father filed two motions to dismiss for lack of subject matter jurisdiction, dated April 18, 2023 and May 24, 2023. The motions have been consolidated.

2. Mother timely filed a response to the motions on June 13, 2023.

3. Father failed to appear in person at the continuation of the evidentiary hearing on August 3, 2023, and his request for remote appearance was denied on the same date on the record for the reasons stated therein. Mother through counsel moved to dismiss the motions on the same date.

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1. Mother's oral motion to dismiss Father's motions to dismiss for lack of subject matter jurisdiction filed herein is GRANTED. Father's motions to dismiss are DISMISSED.

2. The award of attorney fees and costs shall be subject to ORCP 68.

8/18/2023 4.02:44 PM

**Circuit Court Judge David J. Orr**

UTCR 5.100 CERTIFICATE OF READINESS: This proposed order is ready for judicial signature because *objections have been filed by Respondent.*

**DATED** this _16_ of August, 2023.

BUCKLEY LAW P.C.

By: _____

Taylor L. M. Murdoch, OSB No. 111307
tlm@buckley-law.com
of Attorneys for Mother

Page 2 – **ORDER RE DISMISSAL OF RESPONDENT'S MOTION TO DISMISS**

Buckley Law PC
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

**APPROVED AS TO FORM:**

_____     _____
Thomas A. Bittner, OSB No. 901785     *date*
tbittner@schulte-law.com
Of Attorneys for Respondent

Page 3 – **ORDER RE DISMISSAL OF RESPONDENT'S
MOTION TO DISMISS**

Verified Correct Copy of Original 12/28/2023

**CERTIFICATE OF SERVICE**:      I certify that I served on August 7, 2023, a complete and exact copy (true copy) of this *Order Re: Contact* on the parties or their representative(s) by hand delivering a true copy to the following address, as follows:

**Thomas A Bittner**
**Schulte Anderson**
**811 SW Naito Pkwy Ste 500**
**Portland OR  97204**

**DATED** this _7_ day of August, 2023.

                                        BUCKLEY LAW P.C.

                              By: _____
                                        Taylor L. M. Murdoch, OSB #111307
                                        tlm@buckley-law.com
                                        of Attorneys for Mother

Page 4 – **ORDER RE DISMISSAL OF RESPONDENT'S MOTION TO DISMISS**

23DR08269

Verified Correct Copy of Original 12/28/2023.

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

Family Law Department

In the Matter of:

Arnaud Paris,

                Petitioner,

      and

Heidi Brown,

                Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 23DR08269
*Related Case No.: 22DR17285*

**LIMITED JUDGMENT RE:
REGISTRATION**

---

**THIS MATTER** came before the Court for hearing on July 12, 13, and 18, and August 3 and 4, 2023. Respondent Heidi Brown, hereinafter Mother, appeared in person with Taylor L. M. Murdoch, of her attorneys Buckley Law P.C. Petitioner Arnaud Paris, hereinafter Father, appeared in person on July 12, 13 and 18, and failed to appear on August 3 and 4, 2023. By the stipulation of the parties, the evidentiary hearing occurred simultaneously with the evidentiary hearing on Father's *Motion to Dismiss for Lack of Subject Matter Jurisdiction* in Jackson County Circuit Court case no. 22DR17285, until said motion was granted by the Court on August 3, 2023. Father was represented by counsel, Thomas A. Bittner, of his attorneys, Schulte Anderson, in that matter, and had his French counsel Terrence Richoux, available by phone during these proceedings on July 12, 13 and 18.

Page 1 – **LIMITED JUDGMENT RE: REGISTRATION**

Buckley Law PC
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

1   The Court, having received argument and evidence from counsel and the parties, and

2   Mr. Paris having received specific notice of the hearing continuation on August 3rd, and

3   having failed to appear, and his request to appear remotely from France at the continuation

4   of the hearing on August 3rd having been denied on the record, and Mr. Paris and his counsel

5   having been permitted to attend the hearing, but not having been permitted to present further

6   argument or evidence after his failure to appear on August 3rd, and the Court being fully

7   advised in the premises, makes the following

8

## FINDINGS OF FACT

9

10  1.   Mother and Father are the unmarried parents of two minor children, Eva and

11       Juliette, age 8.

12

13  2.   The children were born in Ashland, Oregon, at Ashland Community Hospital.

14       They are United States citizens. During the first months of their lives, the

15       children lived in Oregon. They later acquired citizenship of France during the

16       time they were living in California when they were two years old.

17  3.   The Court received evidence about the children's extensive contacts and

18       connections with Oregon. Significant evidence exists concerning the children's

19       contacts with Oregon, including evidence concerning the children's care,

20       protection, training and personal relationships.

21

22       The maximum contacts and evidence about the children are in one state:

23       Oregon.

24

25

Page 2 – LIMITED JUDGMENT RE: REGISTRATION

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlrn@buckley-law.com

Verified Correct Copy of Original 12/28/2023._

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The children have a large network of extended family, including young cousins ranging from age 2-15, in the Rogue Valley, Oregon area with whom they are closely bonded and with whom they have spent significant time throughout their lives. Multiple witnesses, including Mother's stepbrother Shaun Olson, testified about the extensive family connections with the children that have been fostered over the years. Mr. Olson also testified about a sleep-over at his house with the children on October 4, 2022.

a. The children were still enrolled in school in early October, 2022 at Bellevue Elementary School in Ashland. Juliette's teacher Ellen Gayton testified that Juliette fit in right away in the class. Mother testified that the children had many friends when they began school there in August, 2022 because of their relationships with friends in the Rogue Valley. The children participated in the school run fundraiser. Ms. Gayton testified that she had regular interactions with Father at drop-offs, and that she had further observations of Mother, Father and the children that she could share at a subsequent custody proceeding in Oregon.

b. The Court received into evidence copies of the children's medical records with Dr. Jani Rollins, where they have been cared for since birth. Mother testified that Dr. Rollins would be available to testify in a further custody hearing in Oregon.

Page 3 – LIMITED JUDGMENT RE: REGISTRATION

Buckley Law PC
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel. 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

c. The Court received into evidence copies of the children's orthodontia records from their orthodontist in Ashland, where they had been treated since 2021, when they were six years old.

d. The Court received into evidence testimony from the children's dance teacher Cassandra Preskenis, who has taught them at numerous times throughout their lives. She had observations about the parents and children that she could share at a later custody hearing in Oregon.

e. The Court received testimony from the children's maternal grandmother Margaret Olson, who lives in Ashland, about her involvement with the children throughout their lives. This involvement included being present for their birth, for annual time in Ashland during holidays, staying with the children and the parties in California, traveling to France with the family, and other information about the children. She indicated she had observations about the parents and children that she could share at a later custody hearing in Oregon.

f. The Court received testimony from the children's maternal grandfather, Mother's stepfather, who lives in Ashland, about his involvement in the children's lives throughout their lives. This involvement included being present at their birth, for annual time in Ashland during holidays, traveling to France with the family, teaching them how to fish in the summer of 2021, teaching them rudimentary wood-working, and other information

Page 4 – LIMITED JUDGMENT RE: REGISTRATION

Buckley Law PC
5300 SW Meadows Rd., Ste 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
rlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023._

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

about the children. He indicated he had further observations about the parents and children that he could share at a later custody hearing in Oregon.

g. The Court received testimony from other friends, namely Mary Chapman, Noah Treiger, and Jay Treiger, all of whom are located in the Rogue Valley, who testified about contact with the children over the years since their birth. Ms. Chapman and Messrs. Treiger testified that they had additional observations of Mother, Father, and of the children that they could share at a later custody hearing in Oregon.

h. In the summer of 2022, Mother testified that Father placed an air tag in her vehicle which she used to drive the children, and Mother reported the incident to the Ashland Police. Mother testified that the Ashland Police officer who took her report would be available to testify later in a custody proceeding in Oregon.

i. Mother testified that in the summer of 2022, Father accessed her computer in Ashland without her consent to read her private communications with her French lawyer, and when Mother discovered this she reported it to the police. There is a criminal case pending in Jackson County Circuit Court case no. 22CR59524. The officer and any witnesses who appear in that proceeding could appear in a later custody proceeding in Oregon.

Page 5 – LIMITED JUDGMENT RE: REGISTRATION

Verified Correct Copy of Original 12/28/2023.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

j. Mother testified that the parties hired an au pair to live with the family in Ashland, who then lived in the household with the children from August, 2022 until November 2022. Mother testified that the au pair would be available to testify in a later custody proceeding in Oregon about her observations of the parties and the children.

k. Mother and Father and the children were all living in Ashland, Oregon in October 2022.

l. All parenting time from the date of the girls' move to Oregon in July 2022 through October, 2022 was exercised in Oregon.

m. On October 6 and 7, 2022, Father lived in Oregon and did not remain in France.

4. Significant evidence does not exist for the children's connections with any other jurisdiction.

a. Father's presentation of evidence in his declarations filed with the court focused on him, and not the children, living in France. Father's testimony was stricken when he refused to appear in person for his cross-examination. Father's statements in his declaration were not credible.

b. Father's apartment in France is not a family home. He did not live there on October 6 or 7, 2022. The family only stayed there briefly when they went to France as it is not suitable for a family. Mother testified that the

Page 6 – LIMITED JUDGMENT RE: REGISTRATION

**Buckley Law PC**
· 5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023._

apartment is not legally possible to use as a family home because it is too small for the four of them to reside there for Paris residency requirements.

c.  Mother testified that the parties not only intended to be in France for a short period of time for pre-school in 2019-20, they lived like it. They lived in a furnished apartment. They focused their efforts on developing a family home first in California and then, beginning in 2021, in Ashland. Mother testified that for much of the time during their stay in Paris from August 2019-July 2022, French rules, uncertainty over the COVID-19 pandemic, and the parties' own concern for their and the children's health limited their interactions with the world around them. When the parties moved back to the United States in 2022, they sold all their limited furnishings, said goodbyes, and unenrolled the children from school in France.

d.  Although the parties through counsel signed an agreement on July 19, 2022 (Exhibit 18) for the family to alternate years between France and Oregon, this agreement was both 1) based on the assumption that the parties would stay together as a couple and family, and 2) included language that the agreed alternation was dependent on the children's best interests. The parents are no longer a couple. Mother made clear that she did not believe it was in the children's best interests to leave Oregon.

e.  At a hearing in US District Court in December, 2022, the Honorable Judge Michael McShane found that the parties had stipulated to the children's

Page 7 – LIMITED JUDGMENT RE: REGISTRATION

Buckley Law PC
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

move to Oregon in 2022, and that there was no wrongful removal or wrongful retention of the children.

f.  The only information about the children's lives in France besides from Mother was presented by Sebastian Natal, who had little information about the children and testified he had not talked to them since Father and Mother moved to Oregon in 2022. Mr. Natal was able to testify remotely from France in this hearing, and likely could appear remotely at a later hearing if called to testify.

g.  Mother testified that there is limited family in France, and the children are not as bonded to paternal cousins as they are to the maternal cousins because of a significant age gap between paternal relatives and the children.

h.  To the extent that there is evidence in France, subject to the court's discretion, under Oregon law a party such as Mother or Father can call the witnesses remotely to testify in a custody proceeding in Oregon.

i.  Mother testified that the French court did not allow witnesses to be called remotely, or for witnesses to testify meaningfully at all in that proceeding.

5.  In late August, 2022, until at least October 7, 2022, Father, Mother, and the children were living together in the marital residence on Leonard Street in Ashland, Oregon.

6.  Father did not live in France- or anywhere else besides Ashland – in early October 2022. He had moved to Ashland to be with Mother and the children

Page 8 – **LIMITED JUDGMENT RE: REGISTRATION**

Verified Correct Copy of Original 12/28/2023.

in August, 2022. He had moved his permanent belongings from storage in California to Ashland in late August, 2022. His credit card and bank statements for September-October 2022 (Exhibits 79 & 80) show him buying groceries for the family in Ashland and Medford, going out to eat in Ashland, and living in Oregon with his children.

7. The children were born in Ashland, Oregon and are United States citizens. They later acquired citizenship of France while living in Topanga, California.

8. The proceedings in this matter have demonstrated that a Court of the State of Oregon may and can take extensive testimony and evidence via remote means from witnesses located abroad. All of the witnesses necessary to resolve the parties' custody dispute can likely participate in this proceeding, even remotely if necessary.

9. Substantial evidence does not exist in France.

    a. The children were in France from mid-2019 to mid-2022 on a temporary basis.

    b. They had been to visit France before, but only stayed briefly to visit family.

    c. The parties moved to France from Los Angeles in 2019 to take advantage of free pre-kindergarten for the twins. They intended to return to California initially, and then to Oregon.

    d. While in France, the family stayed in a furnished apartment.

Page 9 – LIMITED JUDGMENT RE: REGISTRATION

Buckley Law PC
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tim@buckley-law.com

Verified Correct Copy of Original 12/28/2023

e. The family's stay was extended against their wishes due to the unforeseen effects of the COVID-19 pandemic.

f. During the parties' stay in France, they returned with the children to see family in Oregon for over three months, to build the family home in Ashland, and attended orthodontia appointments in Oregon.

g. The children had been unenrolled in French schooling by their parents consent in the summer of 2022.

h. Father apparently filed taxes claiming he was a resident of California during the years the parties were in France.

i. On October 5, 2022 Father acknowledged the children lived in Oregon and promised that he would never kidnap them to France.

j. The parties had said their goodbyes and departed from France to Oregon as family in July and August, 2022.

k. There is no evidence that the French court would consider extensive evidence from outside France about the children.

10. Under the totality of the circumstances, the parties' move from France to Oregon was not a temporary absence from France.

a. The children lived in Oregon on October 7, 2022.

b. Father lived in Oregon on October 7, 2022. He loves his children and would not live in France away from them.

Page 10 – LIMITED JUDGMENT RE: REGISTRATION

Buckley Law PC
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

c. Mother lived in Oregon on October 7, 2022. She loves her children and would not live anywhere else away from them.

d. The parties sold their temporary furniture in moving from France. They did not maintain a family residence in France after leaving in the summer of 2022. When Father returned to France with the minor children in violation of this court's orders in July, 2023, he did not take them to live in his small apartment in Paris. He took them to his parent's home in the suburbs of Paris.

e. While Father told the court in his declaration that he went to France in September, 2022, Mother testified that he in fact went primarily to Germany.

f. Father told Mother several times that he would agree to live in Oregon, and his actions corresponded to his statements.

g. Father drove the family vehicle from California to Oregon to register it and have it insured in Oregon in 2021.

h. Mother testified that Father claimed residency in California for tax purposes the entire time the parties were in France, until at least October 2022.

i. The parties' mediated agreement from July 2022 (Exhibit 18) was an agreement for the family to live together, and did not contemplate the parties separating. It also made clear that the agreement was conditioned

Page 11 – LIMITED JUDGMENT RE: REGISTRATION

Verified Correct Copy of Original 12/28/2023.

on both parties agreeing that it was in the children's best interests to continue to follow the terms beyond getting to Oregon in the summer of 2022.

11. Mother prevailed at the Hague proceeding in December 2022. The children were not wrongfully removed from France. Father intended for the children to come to live in Oregon.

12. In March 2023, at a hearing in France in which Mother was not present, Father obtained a favorable custody determination.

a. The French court is not a court of record such as an Oregon court of record. There is no independent record of proceedings for a party such as Mother to refer to in litigation. Notice is provided only through counsel.

b. Mother is not a citizen of France.

c. Mother's initial French counsel, Noemie Hodara, had to withdraw because of a complaint filed by Father after the initial appearance in January 2022.

d. Mother had no reason to believe that anything other than jurisdiction would be addressed at the proceeding in March, 2023. Her lawyer made clear to her that the March, 2023 hearing applied only to jurisdiction. Accordingly, Mother presented only evidence on the habitual residence standard.

Page 12 – **LIMITED JUDGMENT RE: REGISTRATION**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel. 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

e. Mother did not have an opportunity to call witnesses, cross examine witnesses, or meaningfully rebut Father's evidence at the March 2023 French hearing. She could not appear remotely.

f. At the March 2023 hearing, Father represented himself as living in France as a resident of Paris in early October, 2022 and at the time of the hearing. Neither representation was true. He lived in Oregon in early October, 2022. He was exercising week-on, week-off time with the children subject to the TPOR Status Quo at the time of the hearing, and was receiving health benefits and wages from his employer in Texas in March, 2023.

g. If Mother believed the French court would have decided anything on exercising jurisdiction, Mother would have done anything possible to be in France. She testified she would have swam to France if necessary, and her desire to be there was credible. She testified she has spent over $300,000 on legal fees in this matter, and it does not make sense that a person such as Mother would not appear if she thought her rights as the children's mother would be substantially affected.

h. Mother received a summons in the French proceeding, but had to rely only on her French counsel for understanding the proceedings in the French court.

Buckley Law PC
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

i. Mother did not receive a hearing notice for the French hearing such as a hearing notice generated by the State Courts of Oregon. Her counsel indicated to her that the hearing would be on jurisdiction only

j. Mother presented no evidence at the hearing on the issue of custody and parenting time because of her lack of understanding of the court's procedures.

k. Mother is a citizen of the United States. Mother's due process rights and constitutional right to open court proceedings were implicated by the French court's ruling on her custodial rights.

l. Given the stakes involved, the relief requested, and the position taken by Father to limit Mother's parenting time to time in France, including presently seeking an order stopping the children from leaving France for the next five years, the hearing in France was akin in substantive way to a termination of parental rights proceeding in Oregon.

m. A parent's right to parent their child is a fundamental right protected by US Constitution and the Oregon Constitution.

n. Through no fault of her own, Mother did not appear at the French hearing wherein Father was granted "shared custody" of the children. In later documents, Father represented to authorities that he was awarded sole custody.

Page 14 – LIMITED JUDGMENT RE: REGISTRATION

Verified Correct Copy of Original 12/28/2023.

13. The French court's jurisdictional ruling is on pages 3 and 4 of the Judgment rendered on April 21, 2023 by the Family Court Judge Karima Brahimi.

   a. The language in the jurisdictional ruling of the French judgment is as follows: "*In this case, in light of the documents in the file and the debates, it appears that since the birth of the two daughters, the couple and the children have resided alternately in France in the United States; that since the start of the 2019 school year, the couple an the children have settled in France and the two daughter have been schooled in France, that during April 2022, relationship difficulties have arisen between the couple and that the two parents no longer agree on the family's place of residence, with Mr. PARIS wishing to remain in France and Ms. BROWN wishing to return to the United States; that nevertheless the parents agreed on July 19, 2022 for the family to leave for the United States for the 2022-2023 school year, the couple's two daughters having arrived on American territory on July 29, 2022. "Thus, at the time of the referral to the French court, on October 6, 2022, Juliette and Eva had been residing in the United States for only two months; before that, they had been residing and attending school in France for three years, a country in which they were socially integrated; if the parents agreed to return to the United States, this agreement concerned only the 2022/2023 school year, and thus it cannot be inferred that the parents had the common intention of transferring the children's residence to the United States on a long-term basis.*

Page 15 – **LIMITED JUDGMENT RE: REGISTRATION**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel· 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023._

*"Consequently, taking into account these elements, it appears that on the day of the referral to the French court, i.e. October 6, 2022, Juliette and Eva had their habitual residence in France.*

*"Therefore, the French judge is competent to rule on claims relating to parental responsibility* (emphasis added). *"*

i. The French court's ruling on jurisdiction primarily focused on the intent of the parties and their consent in establishing a habitual residence for the children and assuming jurisdiction.

ii. The French court's ruling on jurisdiction focused on the children's habitual residence, and where they were integrated socially.

iii. The French court did not address anything about the home state of the minor children, or the extended home state of the minor children.

iv. The French court did not weigh the relative maximum contacts between the children and France, or between the children and Oregon, or any other jurisdiction, in making its determination to exercise jurisdiction.

v. The French court did not consider whether Father and the children were located in France and whether Father was exercising parenting time in France in October 2022.

vi. The French court was factually wrong to the extent that it determined Father was living in France for the purposes of the UCCJEA. Father was living in Oregon, not France in early October 2022.

Page 16 – LIMITED JUDGMENT RE: REGISTRATION

Verified Correct Copy of Original 12/28/2023.

b. The French court was aware of this proceeding before it made its jurisdictional determination. Mother testified that it made no effort to contact this court before awarding Father custody and the French judgment does not reflect any effort or consideration of Oregon's jurisdiction besides which court was "seized" first. The French court did not attempt to communicate with this court.

14. It is the French judgment, and the applicable UCCJEA standards that are the focus of the proceedings before this Court.

15. Before resolving any substantive matters, this Court must determine whether or not this Court has subject matter jurisdiction over the minor children under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").

16. The hearing on the issue of whether or not this Court has UCCJEA jurisdiction took place over the course of multiple days, wherein the Court heard testimony from multiple witnesses and received evidence from witnesses in France and in the courtroom. Both parties were given extensive opportunity to produce witnesses. Both parties were, or had the opportunity to be, represented by counsel. Father was able to present his case *pro se* as he saw fit, subject to the rules of evidence, during the first three days of hearing.

17. After the first three days of hearing, Father wrongfully misrepresented the registration of the French judgment to lawful authorities, and, contrary to this

Page 17 – **LIMITED JUDGMENT RE: REGISTRATION**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
dm@buckley-law.com

court's prior, explicit, written, and repeated orders, ~~absconded to France with~~ removed the minor children from this state and took them to France.

18.    A TPOR was entered on October 7, 2022 and remains in effect. Neither party is allowed to leave the state of Oregon with the minor children without the agreement of the other parent.

19.    Father and the minor children are located in France at present, in violation of this court's orders. As the Court told Father on June 21, he violates this court's orders at his peril.

20.    Father was aware of the TPOR and was told repeatedly by the Court that the judgment had not yet been confirmed or validated.

21.    Mother testified that Father requested that the August 3, 2023 hearing be set so he could personally appear.

22.    Father filed belated motions for remote appearance for the August 3rd, 2023 continuation of hearing. His motions were not timely, were not in good faith, and were prejudicial to Mother, who was about to resume her cross-examination of Father. Father should not violate court orders and expect to ~~receive special treatment as a result~~ thereby gain any advantage.

23.    The children have a highly desirable pediatrician, dentist, and orthodontist in Oregon.

Buckley Law PC
5300 SW Meadows Rd , Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
dm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

Verified Correct Copy of Original 12/28/2023.

24. Taking into account the above facts, the children did not have a home state on October 6 or October 7, 2022 for the purposes of the UCCJEA, ORS 109.741(1)(a).

   a. The children did not have an extended home state at the time either, because Father did not continue to live in France in early October 2022. He lived in Oregon.

   b. The children and the children's parents, or the children and at least one person acting as a parent, did not have a significant connection with France in early October 2022, because substantial evidence concerning the children's care, protection, training and personal relationships was only in Oregon, and not France, ORS 109.741(1)(b)(A)-(B).

   c. The children and the children's parents, or the children and at least one person acting as a parent, did not have a significant connection with France in early October, 2022, because Father did not reside in France at the time, and although he maintained a meaningful relationship with the children, in doing so, he exercised parenting time in Oregon, ORS 109.741(1)(b)(A)-(B).

   d. No other state than Oregon would have jurisdiction under ORS 109.741(1)(a),(b) and (c) to make an initial custody determination.

25. Oregon has jurisdiction to make an initial custody determination. The issuing court of the French judgment did not have jurisdiction under ORS 109.741 to ORS 109.771. ORS 109.787(5)(a).

Page 19 – **LIMITED JUDGMENT RE: REGISTRATION**

**Buckley Law PC**
5300 SW Meadows Rd , Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

26. Mother is contesting registration, and was entitled to notice of the French judgment for the purposes of Oregon law. Notice was not given in accordance with ORS 109.724 and the Oregon Constitution, Article 1, Section 10, of the initial custody determination in the proceedings before the French court that issued the order for which registration was sought.

27. It is appropriate that this court assume jurisdiction.

## NOW, THERFORE IT IS HEREBY ORDERED AND ADJUDGED:

1. This court is authorized by the UCCJEA, ORS 109.701 et. seq., to take jurisdiction over the minor children of the parties and this matter.

2. France does not have jurisdiction over the minor children of the parties and this matter pursuant to ORS 109.701 et. seq.

3. Mother has established by clear and convincing evidence that the issuing court in France did not have jurisdiction to make an initial custody determination under ORS 109.741 to ORS 109.771.

   a. This Court declines to confirm Father's registration of the French custody order, as France did not have home state or significant connection jurisdiction under factual circumstances in substantial conformity with the UCCJEA at the time it made the custody order.

   b. For the foregoing reasons, pursuant to ORS 109.787(5)(a), the request to register the child custody determination in the judgment of the French court is DENIED.

4. Mother has established by clear and convincing evidence that Mother was entitled to notice, but notice was not given in accordance with the standards of

Page 20 – LIMITED JUDGMENT RE: REGISTRATION

Verified Correct Copy of Original 12/28/2023.

ORS 109.724 and the Oregon Constitution in the proceedings before the French court.

   a. The French court's processes and procedures in the application of these facts do not substantially conform with the UCCJEA standards or Oregon constitution. As such, the French court's custody determination is not lawful in this country and in this Court.

   b. Mother did not have actual notice of the French proceeding and an opportunity to be heard for the purposes of Oregon law. To register, confirm, and validate the French judgment in this circumstance would be a violation of ORS 109.787(5)(c) and of Mother's constitutional rights under the Article 1, Section 10 of the Oregon Constitution.

   c. Father had notice of this proceeding and an opportunity to be heard.

   d. For the foregoing reasons, pursuant to ORS 109.787(5)(c), the request to register the child custody determination in the judgment of the French court is DENIED.

5. In making an initial custody determination, France did not have subject matter jurisdiction as required under the UCCJEA.

6. A court's analysis under the habitual residence standard and the UCCJEA home state standard may come to different conclusions given certain facts presented in a matter. This Court makes no ruling on the applicability of the habitual residence standard by the French court.

7. France did not have home state jurisdiction, as the children had lived in Oregon for approximately two months at the time Father filed for custody in France.

Page 21 – **LIMITED JUDGMENT RE: REGISTRATION**

Verified Correct Copy of Original 12/28/2023.

a. Father did not live in France at the time Father filed for custody in France. In considering the totality of the circumstances, Father's argument that his absence from France was temporary fails. Father's absence from France was not temporary.

b. Father's argument that France had extended home state jurisdiction is without merit. He did not live in France on October 7, 2022. He lived with his children and Mother in Oregon.

c. The French judgment is not in substantial factual conformity with the UCCJEA pursuant to ORS 109.781.

   i. The French court impermissibly gave significant weight to its determination of the intention of the parties in establishing a habitual residence of the children. That is an error of law for the purposes of the UCCJEA. Subject matter jurisdiction cannot be conferred. Jurisdiction cannot be conferred by the parties by consent, nor can the want of jurisdiction be remedied by waiver, or by estoppel. *Matter of Marriage of Schwartz and Battini*, 289 Or App 332, 338 (2017), citing *Shepard v. Lopez-Barcenas*, 200 Or App 692, 697, 254, rev. den., 339 Or 475, 124 P.3d 1248 (2005) ("[A] party's consent to the trial court's jurisdiction over the initial determination of custody under the UCCJEA has no effect if, indeed, the court lacked jurisdiction to make that determination."); see also *Medill and Medill*, 179 Or App 630, 645, 40 P.3d 1087 (2002) (same).

   ii. The French court did not weigh the maximum contacts.

Page 22 – **LIMITED JUDGMENT RE: REGISTRATION**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel. 503-620-8900 Fax: 503-620-4878
rlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

iii.   The maximum contacts for evidence concerning the children are present in Oregon.

iv.   To the extent that any necessary evidence is present in France, the witnesses in France can testify in the custody proceeding remotely.

8.   The French court does not have significant connection jurisdiction.

a.  The French court did not determine whether it had home state jurisdiction or anything similar to it, a necessary step before determining significant connection jurisdiction.

b.  The French court was aware of this proceeding and should have communicated with this Court before making a custody determination, but the French court did not do so. **See ORS 109.751(4).**

c.  Father was not exercising his parenting time in France at the time the custody matter was filed in France, and was not residing in France at the time either.  Under the *Mayfield* test for significant connection jurisdiction, 306 Or App 386, 392 (2020), citing *White v. Harrison-White,* 280 Mich. App. 383, 394 (2018), France did not have significant connection jurisdiction.

9.   Oregon has subject matter jurisdiction over the minor children under the UCCJEA based on significant connection jurisdiction, as there is substantial evidence of the children's care, protection, training, and personal relationships in Oregon. As such, this Court will proceed in presiding over the parties' dissolution and custody matter, and all related matters.

10.   The French judgment has never been registered in Oregon.  It is not a valid order of Oregon and has no legal effect here.  It had no legal effect in Oregon

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
dm@buckley-law.com

at the time that Father fled with the minor children to France on or about July 22, 2023.

11. Additionally, in making its custody order, France failed to provide Mother with notice as is required by the UCCJEA and Oregon Constitution before a child custody determination is made.

12. The French judgment fails the UCCJEA's jurisdictional and procedural requirements. As such, the French custody determination is unlawful.

13. Father failed to appear at the continuation of this hearing on August 3, 2023. He had actual notice of the proceeding. He had an opportunity to be heard. He was not present because he was in willful violation of the court's orders not to leave the state with the minor children.

14. Father knew or should have known that the French judgment had no legal effect in Oregon until this hearing was adjudicated.

15. Father has acted in bad faith in this proceeding.

16. The award of attorney fees and costs, if any, should be determined pursuant to ORCP 68.

8/18/2023 3:37:20 PM

_Circuit Court Judge David J. Orr_

**_[UTCR CERTIFICATE FOLLOWS ON NEXT PAGE]_**

Page 24 – **LIMITED JUDGMENT RE: REGISTRATION**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

**UTCR 5.100 CERTIFICATE OF READINESS:** This proposed order is ready for judicial signature because *I have received no timely objections, despite an email to the contrary.*

**DATED** this *16* day of August, 2023.

BUCKLEY LAW P.C.

By: _____
Taylor L. M. Murdoch, OSB No. 111307
tlm@buckley-law.com
of Attorneys for Mother

Page 25 – **LIMITED JUDGMENT RE: REGISTRATION**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

1

**APPROVED AS TO FORM:**

2

3

_____        _____
Thomas Bittner, Attorney for Father          *date*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 26 – LIMITED JUDGMENT RE: REGISTRATION

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

1 CERTIFICATE OF SERVICE: I certify that I served on August 10, 2023, a complete and
2 exact copy (true copy) of this on the parties or their representative(s) by causing to be hand
delivered a true copy, as follows:

3
4 **Thomas A Bittner**
**Schulte Anderson**
5 **811 SW Naito Pkwy Ste 500**
**Portland OR 97204**

6
7 **DATED** this _11_ day of August, 2023.

8                                         **BUCKLEY LAW P.C.**

9
10                            By: _____
                                   Taylor L. M. Murdoch, OSB No. 111307
11                                 tlm@buckley-law.com
                                   of Attorneys for Mother
12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27 – **LIMITED JUDGMENT RE: REGISTRATION**

**Buckley Law PC**
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

Verified Correct Copy of Original 12/28/2023.

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

IN THE MATTER OF: )
)
HEIDI MARIE BROWN, )
) CASE NO. 22DR17285
PETITIONER, )
) **TEMPORARY PROTECTIVE ORDER OF**
) **RESTRAINT**
and )
) (Pre-Judgment Status Quo – ORS 107.097)
ARNAUD PARIS, )
)
RESPONDENT. )

This matter came before the court on Petitioner's ex parte motion for a temporary pro-tective order of restraint. Based upon Petitioner's declaration and the other documents on file herein, the court hereby finds the following:

1.      The parties' minor children are Eva Lilie Paris (7) and Juliette Manon Paris (7).

2.      Their children's usual place of residence is with Petitioner at 665 Leonard St., in Ashland, Oregon.

3.      Their children are currently enrolled and attend school at Bellview Elementary School in Ashland, Oregon.

4.      Both parties exercise parenting time with their children on a roughly equal basis.

THEREFORE, IT IS HEREBY ORDERED that Petitioner and Respondent are restrained from the following:

1.      Changing their children's usual place of residence at 665 Leonard St., in Ashland, Oregon;

2.      Interfering with the present placement and daily schedule of their children, which includes attending school at Bellview Elementary School in Ashland, Oregon;

TEMPORARY PROTECTIVE ORDER OF RESTRAINT (Pre-Judgment Status Quo – ORS 107.097)
Page 1 of 3

Verified Correct Copy of Original 12/28/2023.

3.      Hiding or secreting their children from the other party;

4.      Interfering with the other party's usual contact and parenting time with their children which is on a roughly equal basis;

5.      Leaving the state with their children without the written permission of the other party or the permission of the court; and

6.      In any manner disturbing the current schedule and daily routine of the child until custody or parenting time has been determined or the parties otherwise agree in writing.

10/11/2022 4:15:55 PM

**Circuit Court Judge David J. Orr**

TEMPORARY PROTECTIVE ORDER OF RESTRAINT (Pre-Judgment Status Quo – ORS 107.097)
Page 2 of 3

Verified Correct Copy of Original 12/28/2023

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UTCR 5.100 Certificate of Readiness**

This proposed order is ready for judicial signature because service is not required by statute, rule, or otherwise.

DATED:  10/07/2022

CARTY LAW, P.C.

Sarah Bain, OSB No. 202594
Email: sarah@cartylawpc.com
Attorney for Petitioner

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

**NOTICE**

You may request a hearing on this order as long as it remains in effect by filing with the court a request for a hearing. In the request you must tell the court and the other party that you object to the order and specifically why you disagree with the representation of the status quo described in the order. In the request you must also inform the court of your telephone number or contact number and your current residence, mailing, or contact address.

TEMPORARY PROTECTIVE ORDER OF RESTRAINT (Pre-Judgment Status Quo – ORS 107.097)
Page 3 of 3

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97 22DR17285

Verified Correct Copy of Original 12/28/2023.

1
2
3
4       **IN THE CIRCUIT COURT OF THE STATE OF OREGON**
5            **FOR THE COUNTY OF JACKSON**
6                 Family Law Department
7    In the Matter of:
8    Heidi Brown,                    )  Case No.: 22DR17285
                                     )  Related Case No.: 23DR08269
9                 Petitioner,        )
10           and                     )  **ORDER RE: CONTACT**
                                     )
11   Arnaud Paris,                   )
                                     )
12               Respondent.         )
13   ────────────────────────────────
14       **THIS MATTER** came before the Court for hearing on June 21, 2023.  Petitioner Heidi

15   Brown appeared in person and her attorney, Taylor L. M. Murdoch, of her attorneys Buckley Law,

16   PC, appeared remotely.  Respondent Arnaud Paris appeared in person, and his attorney Thomas

17   Bittner, of his attorneys Schulte Anderson, appeared remotely.

18       The Court, having received argument from counsel and the parties, and fully advised in

19   the premises, makes the following

20       FINDINGS OF FACT

21       1.  Mother and Father are the unmarried parents of two minor children, Eva and Juliette

22          Paris, age 8.

23

24

25

Page 1 – **ORDER**

DocuSign Envelope ID: 81FDED11-437E-4778-8601-CFA545BBDF97

2. A *Temporary Protective Order of Restraint* was signed on October 7, 2022. The *Temporary Protective Order of Restraint* remains in full force and effect. The parties exchange the children on Sundays.

3. The Court's findings on the record of June 21, 2023 as reflected in Exhibit 1 are incorporated herein as if fully set forth.

NOW THEREFORE, IT IS HEREBY ORDERED:

1. *Calls.* Whenever the children desire to call the parent with whom they are not having parenting time, the parent with whom they are with will facilitate such a call. In addition, there will be two points during the week where either parent can call and do a check-in and speak with the children, at 7:30 pm Pacific Standard Time, on Tuesdays and Thursdays.

2. *Discussing the Case.* Neither parent will discuss the pending litigation with the children.

8/3/2023 2:03:14 PM

**Circuit Court Judge David J. Orr**

UTCR 5.100 CERTIFICATE OF READINESS: This proposed order is ready for judicial signature because  opposing counsel agreed to file objections independently.

**DATED** this _____ of June, 2023.

8/3/2023

BUCKLEY LAW, P.C.

By: _Taylor Murdoch_
5B304B810319486

Taylor L. M. Murdoch, OSB No. 111307
tlm@buckley-law.com
of Attorneys for Mother

Page 2 – **ORDER**

Buckley Law PC
5300 SW Meadows Rd., Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900 Fax: 503-620-4878
tlm@buckley-law.com

DocuSign Envelope ID. 81FDED11-437E-4778-8601-CFA545BBDF97

Verified Correct Copy of Original 12/28/2023.

1   **CERTIFICATE OF SERVICE:**     I certify that I served on July 31, 2023, a complete and exact
2   copy (true copy) of this *Order Re: Contact* on the parties or their representative(s) by hand
3   delivering a true copy to the following address, as follows:

4   **Thomas A Bittner**
    **Schulte Anderson**
5   **811 SW Naito Pkwy Ste 500**
    **Portland OR 97204**

6

7         **DATED** this 31 day of July, 2023.

8                             **BUCKLEY LAW P.C.**

9

10                     By: _____
                            Taylor L. M. Murdoch, OSB #111307
11                             tlm@buckley-law.com
12                             of Attorneys for Mother

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3 – ORDER

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

Page 1

Verified Correct Copy of Original 12/28/2023.

```
 1              IN THE CIRCUIT COURT OF THE STATE OF OREGON

 2                     FOR THE COUNTY OF JACKSON

 3

 4    In the Matter of:          )

 5    HEIDI MARIE BROWN,          )

 6              Petitioner,  )

 7      and                 ) Case No. 22DR17285

 8    ARNAUD PARIS,               ) Case No. 23DR08269

 9              Respondent. )

10

11

12                 EXCERPT OF PROCEEDINGS

13                     Pages 1 to 9

14

15

16         BE IT REMEMBERED THAT on June 21, 2023, the

17    above-entitled case came on regularly for hearing before

18    The HONORABLE DAVID J. ORR, a Circuit Court Judge.

19

20    APPEARANCES:

21      Taylor LM Murdoch, Appearing via Webex
        Attorney at Law
22      Representing the Petitioner

23      Thomas A. Bittner, Appearing via Webex
        Attorney at Law
24      Representing the Respondent

25                      -:-
```

LEE BERGER & ASSOCIATES, INC.
Certified Court Reporters
(503) 747-5706


PETITIONER'S EXHIBIT

DocuSign Envelope ID 81FDED11-437E-4776-8601-CFA545BBDF97

_Verified Correct Copy of Original 12/28/2023._

1    **E X C E R P T   O F   P R O C E E D I N G S**

2

3         THE COURT:  Do either -- Mr. Bittner, you

4    were trying to address this issue?

5         MR. BITTNER:  Yeah, Your Honor.  Look,

6    these -- they've exchanged the kids successfully for --

7    you know, since last October.  I think we should let

8    them be.  And I want to object to you modifying your

9    status quo order.  I've explained to you that any effort

10   you make to alter what's going on is in contravention to

11   the judgment in France, and you don't have modification

12   jurisdiction.  So I'm just making a record.  I'm

13   pointing it out.  You're going to do what you want to

14   do.  I get it.  So, you know --

15        THE COURT:  You've made the record multiple

16   times.  That's not what I was asking.  I was asking for

17   your proposal in terms of how to address the problem

18   that is, that is at hand here.  Yeah, I understand that

19   you believe Oregon doesn't have jurisdiction.  That may

20   well be the case.  As of now, that has not been

21   determined.  I will make such orders as are necessary

22   that are in the best interests of the children.

23        Let's talk about what we're going to do here with

24   regards to the parents talking to the children,

25   Mr. Bittner.

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

Verified Correct Copy of Original 12/28/2023.

```
 1            MR. BITTNER:  I guess my point is, what have
 2    they historically done this past year?  It seems to have
 3    been fine.  So I don't know that the Court needs to
 4    intervene.  They may be going through a rough patch,
 5    but, you know, this was not the form, the time, the
 6    place.  You know, I don't know that there is a problem.
 7    They've never complained to me -- or my clients never
 8    complained to me that the kids haven't been able to
 9    communicate with him or the kids with their mother.
10            There have been a lot of complaints from my
11    client about things that the girls repeat to him that
12    mom says that are really, really bad, and so, you know,
13    there is some concern of that.  But the Court has
14    chastised both parties and grandparents and whatnot to
15    shield the kids, and that's, you know, standard and
16    appropriate advice, and I told my client to follow it,
17    and I'm sure that Mr. Murdoch has done the same.  So
18    they've been told what to do.  They need to make the
19    kids available if the kids want to communicate.  And,
20    you know, if there needs to be a midweek check in, they
21    -- whatever.  I understand.
22            But, but I discourage you from making orders that
23    are in modification.  That's a whole different issue
24    than what I said before about this Court not having
25    jurisdiction to make an initial determination.  Now
```

DocuSign Envelope ID: 81FDED11-437E-4776-8601-CFA545BBDF97

_Verified Correct Copy of Original 12/28/2023._

1    you're making a modification.

2        So I'd say let them be and, you know, if

3    somebody's got a problem, they can file a motion.  But

4    jumping in and trying to --

5        THE COURT:  Well, as long --

6        MR. BITTNER:  -- do it on the fly --

7        THE COURT:  -- we're in court here, we

8    might, we might as well get these issues settled to the

9    extent that it's possible to settle them.  I'm going to

10    hear from Mr. Murdoch.

11        But, Mr. Paris, what were you trying to say?

12        MR. PARIS:  Actually, I'm the one who

13    offered the kids yesterday to call their mother.

14        THE COURT:  You were, you were the one who

15    what?

16        MR. PARIS:  I am the one who offered the

17    kids to call their --

18        THE COURT:  To what the kids?

19        MR. PARIS:  Sorry.  I am the person who told

20    the kids, "Do you want to speak to your mom?" yesterday.

21    That phone call was me suggesting to the kids to call

22    their mom.  They don't necessarily want to call their

23    mom every day, nor do they want to talk to her every

24    day.  You know, they're doing lots of fun things.  I am

25    the one that was saying to the kids, Do you want to call

DocuSign Envelope ID 81FDED11-437E-4775-8601-CFA545BBDF97

_ Verified Correct Copy of Original 12/28/2023._

1    your mom?  You haven't talked to her for three days.

2    And I asked, Why do you not want to talk to her every

3    day?  They said, When we're with you, we don't really

4    want to talk to mom, and when we're, when we're with

5    mom, we don't really want to talk to you.  Because last

6    week they called me once.  One of them called me once.

7    That's it.  I don't get to speak to them every day.  And

8    frankly, I don't want to fault them.  If they don't want

9    to talk to me when they're with mom, that's fine.  I

10   suggested that they call their mom yesterday, and they

11   said okay.  Sometimes I suggest and they say no.  I

12   don't think we should fault these kids.  That's what I'm

13   saying.  Even if mom wants to talk to them every day, if

14   they don't want to talk to their mom, I don't think we

15   should fault them, fault them.

16             THE COURT:  What is the exchange day?  What

17   day of the week?

18             MR. PARIS:  It's, it's Sunday.

19             THE COURT:  All right.  Mr. Murdoch,

20   anything on all this before I do something?

21             MR. MURDOCH:  Thank you, Your Honor.

22        Let's just make sure these kids talk to their

23   parents and make sure this is not something where a

24   parent is suggesting one way or the other or is somehow

25   leading -- leaving it to an eight-year-old's

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

_ Verified Correct Copy of Original 12/28/2023._

1    determination.  Let's get an order in place saying these

2    kids have to talk to, talk to mom during dad's time and

3    they have to talk to dad during mom's time.  Let's set a

4    date -- or rather, let's set a time when this happens.

5    It can be every other day.  But let's make sure -- and

6    an order also directing the parties not to discuss these

7    matters with -- this case with the children.  I think

8    that's a straightforward thing that protects these kids

9    and gets them through to the next hearing.

10              THE COURT:  It does sound like we need to

11    make some kind of an order.  So here's what it'll be.

12              First of all, and I think both mother and father

13    are agreeable to this, that the children, whenever they

14    desire, are permitted to call the parent that they are

15    not with, meaning if they're with dad, if they --

16    whenever they want to call mom, they get to call mom; if

17    they're with mom, whenever they want to call dad, they

18    get to call dad, and further, that the parent will

19    facilitate that.  Since they're eight and they don't

20    have phones, the parent will facilitate that.

21              In addition, there will two points during the

22    week where either parent can call and do a check-in and

23    talk to the kids.  My recommendation is that be, that be

24    somewhere around 7:30 in the evening.  I don't know --

25    you want to do that?  Let's see.  So you exchange

_Verified Correct Copy of Original 12/28/2023._

1    Tuesday -- excuse me, you exchange Sunday.  Do you want

2    to do that Tuesday and Thursday or Tuesday and Friday?

3    What are you requesting, Mr. Murdoch?

4              MR. MURDOCH:  Your Honor, I think what the

5    Court is suggesting, on Tuesday and Friday, makes sense.

6    Friday may actually be problematic just because

7    oftentimes families have plans on Friday evening --

8              THE COURT:  All right.

9              MR. MURDOCH:  -- for the upcoming weekend.

10   So let's make it Tuesdays and Thursdays.

11             THE COURT:  Tuesday and Thursday.  So you

12   can call at 7:30 Tuesday and Thursday.  Heidi will make

13   the kids available.

14        You can call the kids when he has them Tuesdays

15   and Thursdays at 7:30.  Mr. Paris will make the kids

16   available.

17        If they tell you they don't want to talk, you

18   tell them, Okay, you don't have to talk.  Just tell your

19   dad, or tell your mom, you don't want to talk because

20   the other parent needs to hear it from them.  All right.

21             MR. PARIS:  So I would agree with you on

22   this.  It's very good advice.  I just can't accept that

23   order.  You don't have jurisdiction, Judge.

24             THE COURT:  Okay.  You refuse --

25             MR. PARIS:  And I will (unintelligible) --

DocuSign Envelope ID 81FDED11-437E-4778-8601-CFA545BBDF97

_Verified Correct Copy of Original 12/28/2023._

1      THE COURT:  -- the Court's orders at your

2   peril.

3          MR. PARIS:  No.

4          THE COURT:  So I'm going --

5          MR. PARIS:  I'm just saying that I will, I

6   will challenge that order in Supreme Court.

7          THE COURT:  Okay.  Well, go ahead and do

8   that.  I'm saying it would be not a good idea, and I

9   think even your attorney would not recommend that you

10  disobey the Court's orders at this point until --

11         MR. BITTNER:  Yeah.

12         THE COURT:  -- you have your Supreme Court

13  order telling you otherwise.

14     Also, Mr. Murdoch, as you were suggesting the

15  language about neither parent discussing the case with

16  the children is very appropriate and apparently

17  necessary here.  So that's where we are.

18     Anything else that we have to put on the record

19  before we adjourn?

20     [END OF EXCERPT:  3:10 PM]

21

22

23

24

25

_Verified Correct Copy of Original 12/28/2023._

1                     C E R T I F I C A T E

2

3          I, Terri Forsyth, a transcriptionist in the

4    state of Oregon, do hereby certify that I reported in

5    stenotype the foregoing audio recorded proceedings had

6    upon the hearing of this matter previously captioned

7    herein; that I thereafter reduced my said stenotype

8    notes to typewriting; and that the foregoing transcript,

9    Pages 1 to 9, both inclusive, constitutes a full, true

10   and accurate record of said audio recorded proceedings

11   to the best of my knowledge, ability, belief, and

12   quality of the recording.

13          Witness my hand as transcriptionist at Portland,

14   Oregon, this 24th day of June, 2023.

15

16

17

18

19

20

21

22

23          Terri Forsyth
             Terri Forsyth
24          Transcriptionist

25

                    LEE BERGER & ASSOCIATES, INC.
                       Certified Court Reporters
                          (503) 747-5706

Verified Correct Copy of Original 12/28/2023.

## NOTICE REGARDING MANDATORY PARENT EDUCATION PROGRAM

1. Mandatory Parent Education Program — A parent education program of the type authorized by ORS 3.425 is established. The program shall provide information on the impact of family restructuring on children to each person named as a party in the following types of proceedings, when such proceedings involve minor children:

   (a) Annulment or dissolution of marriage,

   (b) Legal separation,

   (c) Petition to establish custody or parenting plans (including paternity), and

   (d) Post-judgment litigation involving custody or parenting plans.

2. Each party who files an appearance in a proceeding of the types described above shall complete the program unless exempted by the Court. A final judgment shall not be entered in the proceeding until each party not otherwise exempted by the Court who has filed an appearance has completed the program.

3. The party initiating the proceeding shall register for the program within 15 days after filing the initiating pleadings with the Court. A copy of this local rule and instructions on how to register for the program shall be served by the initiating party on all parties against whom relief is sought. Service shall be completed in the manner provided in ORCP 7 at the time the initiating documents are served. All other parties shall have 30 days after service of the notice upon them to register for the program.

4. The Court shall provide a copy of this rule to the initiating party for service upon all parties against whom relief is sought, together with a statement describing the program including contact telephone numbers, addresses and statement of costs.

5. The program provider shall issue a certificate of completion when the participant has completed the program. The certificate must be filed with the Court.

6. The Court may exempt one or both parties from the program if, after reviewing the requested party's motion and supporting affidavit, the Court determines that participation is unnecessary or inappropriate.

7. Sanctions — Failure or refusal to complete the program in a timely manner shall be considered by the Court in making its ruling on issues which are in dispute.

8. A party who has completed the program shall have the right to:

   (a) Request that the pleadings of a party who has appeared be stricken if that party has not completed the program in a timely manner without good reason.

   (b) Request entry of an order from the Court to compel the non-complying party's completion of the program should the non-complying party not have completed the program in a timely manner without good reason. The Court may enter an award of attorney fees in favor of the complying party who utilizes this option to force the non-complying party's compliance with this rule.

   (c) Apply for entry of a default judgment against a non-appearing party notwithstanding the non-appearing party's failure to participate in the program.

_Verified Correct Copy of Original 12/28/2023._

9. Fees

    (a) Each party shall pay the required fee to the program provider upon registering for the program.

    (b) The program registration fee may be waived or deferred by the Court. The procedure for requesting a fee waiver or deferral shall be the same as used to request a waiver or deferral of the fee when filing a petition for dissolution.

    (c) Application for fee waiver or deferral, if any, must be made prior to registering for the program. When registering, either the fee must be paid or the order waiving or deferring the fee must be provided to the program provider.

_ Verified Correct Copy of Original 12/28/2023._

## NOTICE OF STATUTORY RESTRAINING ORDER PREVENTING THE
## DISSIPATION OF ASSETS IN DOMESTIC RELATIONS ACTIONS

REVIEW THIS NOTICE CAREFULLY. **BOTH PARTIES MUST OBEY EACH PROVISION OF THIS ORDER TO AVOID VIOLATION OF THE LAW.** SEE INFORMATION ON YOUR RIGHTS TO HEARING BELOW

**TO PETITIONER AND RESPONDENT:**

PURSUANT TO ORS 107.093 and UTCR 8.080, Petitioner and Respondent are restrained from:

1. Canceling, modifying, terminating, or allowing to lapse for nonpayment of premiums any policy of health insurance, homeowner or renter insurance, or automobile insurance that one party maintains to provide coverage for the other party or a minor child of the parties, or any life insurance policy that names either of the parties or a minor child of the parties as a beneficiary.

2. Changing beneficiaries or covered parties under any policy of health insurance, homeowner or renter insurance, or automobile insurance that one party maintains to provide coverage for the other party or minor child of the parties, or any life insurance policy.

3. Transferring, encumbering, concealing, or disposing of property in which the other party has an interest in any manner, without written consent of the other party or an order of the court, except in the usual course of business or for necessities of life. Paragraph (3) does not apply to payment by either party of:

   (a) Attorney fees in this action;
   (b) Real estate and income taxes;
   (c) Mental health therapy expenses for either party or a minor child of the parties; or
   (d) Expenses necessary to provide for the safety and welfare of a party or a minor child of the parties.

4. Making extraordinary expenditures without providing written notice and accounting of the extraordinary expenditures to the other party. Paragraph (4) does not apply to payment by either party of expenses necessary to provide the safety and welfare of a party or a minor child of the parties.

AFTER FILING OF THE PETITION, THE ABOVE PROVISIONS ARE IN EFFECT <u>IMMEDIATELY</u> UPON SERVICE OF THE SUMMONS AND PETITION UPON THE RESPONDENT. IT REMAINS IN EFFECT UNTIL A FINAL DECREE OR JUDGMENT IS ISSUED, UNTIL THE PETITION IS DISMISSED, OR UNTIL FURTHER ORDER OF THE COURT.

### PETITIONER'S/RESPONDENT'S RIGHT TO REQUEST A HEARING

Either petitioner or respondent may request a hearing to apply for further temporary orders, or to modify or revoke one or more terms of the automatic mutual restraining order, by filing with the court the Request for Hearing form specified in Form 8.080.2 in the UTCR Appendix of Forms.



Verified Copy of Original 12/28/2023

**Department of Consumer and Business Services**
**Insurance Division**

P.O. Box 14480, Salem, OR 97309-0405
Phone: 503-947-7891, Fax: 503-378-4351
350 Winter St. NE, Salem, OR 97301-3883
Email: dcbs.insmail@state.or.us
www.insurance.oregon.gov

# Notice to parties in a suit for marriage dissolution or legal separation regarding continuation of health coverage

If you or your spouse have filed for divorce or legal separation and currently hold group health insurance coverage through your spouse, your coverage may end when the court grants your divorce or separation. Oregon law offers options that may enable you to continue your coverage. This notice outlines continued coverage options available under Oregon law. Federal law commonly known as COBRA may also enable you to continue coverage. Note: You must act promptly to continue coverage.

Applying for individual coverage may also be an option. Insurers can no longer deny enrollment to individuals because of health or pre-existing conditions. You may be eligible to enroll in a plan through healthcare.gov or directly from an insurer. If you apply for coverage through healthcare.gov, you may qualify for financial assistance.

For more information about Oregon and federal law, consult your health insurer, the plan administrator for your insurance coverage, the employer through whom your insurance is provided, or your attorney.

The following is a summary of options under Oregon law:

1. **Continuation of existing coverage for a divorced or legally separated spouse who is 55 years of age or older (ORS 743.600 to 743.602).** If you are a divorced or legally separated spouse and if you are 55 years of age or older when the dissolution or legal separation occurs, you may continue your existing group coverage until you obtain other group coverage or become eligible for Medicare. In order to continue coverage, you must do both of the following:

   A. You must notify the group health insurance plan administrator in writing of the dissolution or legal separation within 60 days of the entry of the decree of divorce or legal separation.

   B. You must elect to continue and pay for the group coverage. You must make the election on a form provided by the plan administrator.

   Note: This provision applies only if your coverage is provided through an employer who employs 20 or more employees or if your coverage is provided by a group health insurance plan that covers 20 or more employees.

2. **Continuation of existing coverage for a divorced spouse when federal law does not provide for continued coverage (ORS 743.610).** If you are not able to continue your group health coverage under federal law (COBRA), you may continue your existing group coverage upon dissolution of your marriage for a period not exceeding nine months. The following requirements apply:

   A. You must have been continuously covered by the group policy for at least three months prior to your divorce.

   B. You must ask the insurer or the group policyholder, in writing, to continue your coverage. You must also pay the required premiums.

   C. You must make your request by the latter of the following dates:

      (1) Ten days after the date that your coverage under the group policy as a qualified family member ends;

      or

      (2) Ten days after the date on which the employer or group policyholder gives notice of the right to continue coverage.

I. Apply for individual coverage. If you were covered by a group health plan and you lost that coverage because of a legal separation or divorce, you may qualify for a special enrollment and be eligible to purchase an individual plan through healthcare.gov or from an insurer. To qualify for this special enrollment:

(1) Apply through healthcare.gov and pay your premium within 60 days of the date you lost your group coverage; or

(2) Apply for individual coverage from an insurer within 60 days of the date you lost your group coverage.

Remember: The longer you wait to apply, the later your coverage will start. Financial help is available only if you apply for insurance through healthcare.gov. Your insurance agent can also help you apply through healthcare.gov.

Prepared by Insurance Division, Department of Consumer and Business Services, under ORS 107.092. Revised January 9, 2015. Distributed by the Office of the State Court Administrator

Verified Correct Copy of Original 12/28/2023.